# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 02-4247

TEDROS G. MEDHIN,

*Petitioner*,

v.

JOHN ASHCROFT, UNITED STATES ATTORNEY GENERAL,

*Respondent.*

———————

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A77-810-810

———————

ARGUED OCTOBER 29, 2003—DECIDED DECEMBER 1, 2003

———————

Before FLAUM, *Chief Judge*, EASTERBROOK and KANNE,
*Circuit Judges*.

FLAUM, *Chief Judge*. In this immigration case, Tedros
G. Medhin, a native and citizen of Ethiopia, seeks review of
a final order of deportation issued by the Board of Immigra-
tion Appeals ("Board") on November 21, 2002, summarily
affirming an Immigration Judge's order entered on Febru-
ary 21, 2000. For the reasons stated herein, we affirm the
Board's order.

## I. Background

Tedros Medhin was thirty-two years old when he appeared before the Immigration Judge. He was born in the country known today as Eritrea and he is a citizen of Ethiopia. When he was a child, his family encountered some difficulty due to his father's opposition to the creation of a separate Eritrean state. In June 1998, hostilities broke out between Ethiopia and Eritrea. Medhin alleges that he was fired from his job in the Ethiopian government's Ministry of Health because he was considered ethnically Eritrean.

According to his testimony before the Immigration Judge, Medhin was unable to support his family or send his children to school following the loss of his job. On October 2, 1998, the police came to his house looking for him and, when they found that he was not home, they informed Medhin's wife that Medhin was required to report for questioning. Medhin and his family then went into hiding at a friend's home.

Medhin arrived in the United States with a visitor's visa on November 25, 1998, which permitted him to remain until May 24, 1999. After his visa expired, he stayed in the United States without the permission of the government. Medhin's wife and children continue to live in Ethiopia.

Medhin seeks political asylum on the basis of his ethnicity and political opinion. He fears persecution by the government because of his support of the Unity Party, which opposes the separation of Eritrea from Ethiopia. Further, he argues that his ethnicity puts him in danger of deportation. According to a Human Rights Watch Report, 70,000 ethnic Eritreans have been deported since the beginning of the border conflict.

Medhin's original application for asylum was prepared by an individual hired by Medhin's brother, a U.S. citizen. This individual made ten errors on the asylum application,

including the listing of Medhin's religion as "Jehovah's Witness" instead of "Orthodox." At Medhin's asylum interview, the asylum officer caught nine of the errors and corrected them, including the error regarding Medhin's religion. Before the Immigration Judge, Medhin's attorney corrected the remaining error by informing the Immigration Judge that Medhin was seeking asylum on the basis of his nationality and political opinion, but not his religion. Medhin and the Immigration Judge initialed the correction on the asylum application.

At the hearing before the Immigration Judge, Medhin presented documents in support of his claim, including: (1) a letter from the Ethiopian Ministry of Health stating that it is "obligated to terminate your [Medhin's] position . . . today" due to "guidelines regarding Ethiopians who are Eritrean origin"; (2) a letter from his wife, stating that "the incarceration and deportation of Eritreans is continuing unabated. Only last week they came to our house to pick me up . . . [t]he recent peace treaty is a charade"; and (3) a letter from his brother, stating that the petitioner "was fired . . . because of Eritrean origin . . . the government took his house, car and money in the bank". The Immigration Judge challenged the credibility of the letter from the Ethiopian government on the basis that it was written in English, a language not commonly used in government business in Ethiopia. Medhin replied that the letter was in English because the Ethiopian government considered him, an Eritrean, a foreigner. The Immigration Judge also questioned the credibility of the letter from Medhin's brother because he did not appear at the hearing and because his brother likely instructed Medhin to write that he was a Jehovah's Witness on the asylum application. Further, the Immigration Judge dismissed the letter from Medhin's wife because he found it too conclusory and lacking in personal details about her situation.

In an oral decision rendered on February 21, 2000, the Immigration Judge denied Medhin's application for asylum and withholding of removal. The Immigration Judge determined that Medhin was not a victim of past persecution. The Immigration Judge questioned whether Medhin had established any connection between his political opinion and his negative experiences in Ethiopia. However, the Immigration Judge stated that Medhin's claims based on his Eritrean ethnicity "must be taken seriously." Ultimately, though, the Immigration Judge found that Medhin's fear of future persecution was not objectively reasonable due to the current conditions in Ethiopia. Further, the Immigration Judge found that the documents Medhin provided were of questionable validity and therefore insufficient to corroborate his claim. The Immigration Judge stated that this opinion was based on reports in the New York Times regarding the cessation of war and the presence of United Nations peacekeepers along the Eritrean-Ethiopian border. The Immigration Judge refused to consider the relevant reports from the State Department regarding conditions in Ethiopia because the attorney for the government failed to present the report, and in error presented the report of India.

Medhin appealed the Immigration Judge's decision to the Board. The Board summarily approved the Immigration Judge's decision without opinion. Medhin now appeals.

## II. ANALYSIS

An alien seking asylum must establish that he is a "refugee." *See* 8 C.F.R. § 208.13(1) (2003). "[A] person becomes eligible for "refugee" status by showing either past persecution or a well-founded fear of future persecution if returned to her prior country of residence." *Useinovic v. INS*, 313 F.3d 1025, 1030 (7th Cir. 2002) (citing 8 U.S.C. § 1101(a)(42)). Whether an asylum applicant has demon-

strated past persecution or a well-founded fear of future persecution is a factual determination reviewed under the substantial evidence standard. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). Under the substantial evidence standard, the petitioner must show that "the evidence not only *supports* [reversal of the Board's decision], but *compels* it." *Elias-Zacarias*, 502 U.S. at 481 n.1 (emphasis in original); *see also Useinovic*, 313 F.3d at 1029.

In this case, the Board summarily affirmed the Immigration Judge's order without opinion. Thus, the Immigration Judge's decision constitutes the "final agency determination" for purposes of this Court's review. *See* 8 C.F.R. § 1003.1(e)(4) (2003); *Georgis v. Ashcroft*, 328 F.3d 962, 966-67 (7th Cir. 2003).

### A. Past Persecution

The government contends that Medhin failed to raise the issue of past persecution before the Board, and therefore his argument regarding past persecution is waived. Indeed, "[a] court may review a final order of removal only if (1) the alien has exhausted all administrative remedies available to the alien as of right . . . ." 8 U.S.C. § 1252(d)(1) (2003). For reasons unclear to the Court, Medhin chose not to file a reply brief addressing the issues of waiver and exhaustion. Even if we generously interpret Medhin's appeal to the Board as raising the issue of past persecution and thereby exhausting administrative remedies, we must conclude that substantial evidence supports the Immigration Judge's finding that Medhin's experiences in Ethiopia do not rise to the level of persecution.

Medhin claims past persecution due to alleged employment discrimination, and an alleged search of his home. In support, he now offers the State Department's 1999 Country Report of Ethiopia, which states that the "Govern-

ment continued to detain and deport without due process Eritreans and Ethiopians of Eritrean origin." At his hearing before the Immigration Judge, Medhin offered (1) his own testimony, which the Immigration Judge discredited; (2) a letter from his brother, which the Immigration Judge discredited; and (3) a letter from the Ethiopian government, his former employer, which the Immigration Judge discredited. The Immigration Judge refused to consider the State Department Country Report because the government and Medhin both failed to present it at the hearing.

The Immigration Judge's determination that Medhin failed to demonstrate past persecution is supported by the evidence. Although severe, state-sanctioned economic deprivation might rise to the level of persecution, Medhin has alleged only the loss of one job due to his ethnicity. At most, he has suffered discrimination, and although deplorable, "discrimination is not persecution." *Bucur v. INS*, 109 F.3d 399, 402 (7th Cir. 1997). Further, his allegation that the police sought him out but did not arrest him certainly does not rise to the level of persecution. *See Zalega v. INS*, 916 F.2d 1257, 1260 (7th Cir. 1990) (alien had not been persecuted despite four years of intermittent searches, arrests, and detainments).

While it is troubling that the Immigration Judge refused to consider the State Department Country Report for Ethiopia, the report would have provided little assistance to Medhin in proving that he suffered past persecution. Even though the 1999 report suggests that ethnic Eritreans were subject to persecution,[1] the report does not support Medhin's claim that he personally was subjected to persecu-

---

[1] "The Government continued to detain and deport without due process Eritreans and Ethiopians of Eritrean origin . . . more than 67,000 such persons have left Ethiopia for Eritrea . . . ." Bureau of Democracy, Human Rts. & Labor, U.S. Dep't of State, *Ethiopia: Country Reports on Human Rights Practices 1999* at 1-2 (2000), available at http://www.state.gov/g/drl/rls/hrrpt/ 1999/246pf.htm.

tion. Since Medhin does not claim that he was either arrested or deported, the State Department's Country Report would not have been particularly helpful in changing the outcome of Medhin's petition.

Medhin devotes much of his brief to challenging the Immigration Judge's determination that he lacked credibility and the Immigration Judge's rejection of the documents that he offered to corroborate his claim. These arguments relating to credibility have no bearing on the outcome of Medhin's appeal. Medhin's allegations, even if believed, do not demonstrate past persecution.

### B. Future persecution

Medhin argues that he was entitled to a presumption of a well-founded fear of future persecution and that the government did not overcome this presumption. However, because Medhin has not proven past persecution, he is not entitled to the presumption. *See Useinovic*, 313 F.3d at 1032 ("the existence of past incidents of persecution creates a rebuttable presumption of future persecution"). Accordingly, Medhin must present "specific, detailed facts" supporting both the subjective genuineness and objective reasonableness of his fear of future persecution. *Id.* at 1030. Medhin testified that he fears arrest and deportation to Eritrea upon his return to Ethiopia.

The Immigration Judge found Medhin's claim of a fear of future persecution unfounded because conditions had changed in Ethiopia since Medhin's departure. In determining an alien's eligibility for asylum, the Immigration Judge may take administrative notice of changed conditions in the alien's country of origin. *Useinovic*, 313 F.3d at 1030 (citing *Petrovic v. INS*, 198 F.3d 1034, 1038 (7th Cir. 2000)). The Immigration Judge found that Medhin's fear of future persecution unreasonable because (1) the New York Times had reported that the abuse of ethnic Eritreans had abated

by the time Medhin appeared before him and (2) Medhin's family had not yet been deported from Ethiopia. Furthermore, the Immigration Judge found that no credible report had been presented which indicated that Ethiopians of Eritrean descent are still being deported to Eritrea from Ethiopia. Although the Immigration Judge did not consult it, the current State Department report of Ethiopia confirms that "[t]he Government stopped deporting forcibly Eritreans and Ethiopians of Eritrean origin after it signed the cessation of hostilities agreement with Eritrea in June 2000." Bureau of Democracy, Human Rts. & Labor, U.S. Dep't of State, *Ethiopia: Country Reports on Human Rights Practices 2002* at 2 (2003), available at http://www.state.gov/g/drl/rls/hrrpt/2002/18203pf.htm. We may take judicial notice of this report, as it underscores that Medhin's fear of future persecution is not objectively reasonable. *See Nwaokolo v. INS*, 314 F.3d 303, 308 (7th Cir. 2002).

Medhin seeks to counter the Immigration Judge's finding and corroborate his testimony that he has a well-founded fear of future persecution with a letter from his wife, stating that her friends have been deported and that the police have tried to find her. The Immigration Judge did not find this letter credible and we review the Immigration Judge's credibility finding with great deference. *See Georgis*, 328 F.3d at 968. The Immigration Judge was not persuaded, nor are we, that the conclusory statements in Medhin's wife's letter supported a finding of a well-founded fear of persecution. Moreover, the Immigration Judge found that Medhin's case overall lacked credibility due to the errors in his asylum application, his evasive testimony, and the questionable validity of the documents he submitted, including the letter from his wife.

In sum, the Immigration Judge's finding that Medhin does not have a well-founded fear of future persecution is supported by substantial evidence, and should be upheld.

The State Department reports that ethnic persecution against Eritreans has ceased. Further, the fact that Medhin's family has managed to avoid persecution in Ethiopia suggests that there is insufficient likelihood that Medhin will be persecuted upon his return to warrant asylum.

### III.  Conclusion

For the reasons stated above, the decision of the Board is AFFIRMED.

A true Copy:

　　　　Teste:

　　　　　　　　　　_____
　　　　　　　　　　*Clerk of the United States Court of*
　　　　　　　　　　*Appeals for the Seventh Circuit*