

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-6-2004

# Lin v. BCIS

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3355

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Lin v. BCIS" (2004). *2004 Decisions.* Paper 409.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/409

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-3355

SHAO YAN LIN,
                                        Petitioner

v.

BUREAU OF CITIZENSHIP AND IMMIGRATION SERVICES

ON PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS
Agency No. A 72 492 294

Submitted Under Third Circuit LAR 34.1(a)
July 13, 2004

Before: RENDELL, BARRY, and FISHER, Circuit Judges

(Opinion Filed:  August 6, 2004 )

OPINION

BARRY, Circuit Judge

    Shao Yan Lin, a native and citizen of the People's Republic of China, petitions for

review of a final order of the Board of Immigration Appeals ("BIA"), reversing the

decision of the Immigration Judge ("IJ") and denying her application for asylum. We have jurisdiction under 8 U.S.C. § 1252(a), and will deny the petition for review.

## I.

Lin entered the United States on October 21, 1992, and was placed in exclusion proceedings. On March 12, 1993, she filed an application for asylum with the Immigration and Naturalization Service ("INS"). She alleged that she suffered harm as a result of her activities relating to the June 1989 pro-democracy movement. Lin subsequently filed an amended asylum application, indicating, as an additional ground, that she feared persecution on account of China's one-child family planning policy. She conceded excludability.

Hearings were held before the IJ, and Lin alleged the following facts. In 1989, Lin was a teacher in an elementary school in China. On June 2, 1989, she took time off from her teaching position and attended her first and only pro-democracy demonstration in Fuzhou City. She returned to work the next day. Although two of the organizers of the demonstration were Lin's former classmates, Lin had no leadership role but was merely a participant. Following the demonstration, Lin learned that Chinese authorities were looking for her former classmates. Lin offered to hide them at her parents' home, and they stayed there for approximately one month, until mid-July 1989. The authorities soon suspected that Lin housed the organizers. In late July, Lin was questioned by school officials and ordered to attend daily "patriotic" study sessions. In May 1990, ten months

2

after she housed the organizers, Lin was dismissed from her teaching position. She was unable to find another teaching job because the authorities had reported the termination to what she described as the "superior education department of the area." (App. at 145). Although Lin subsequently tried to work as a clerk, cashier, and fruit vendor, she "couldn't really make money on these." (Id.). In March 1991, Lin received a notice to appear at the local police station. She did not go to the station but, rather, went into hiding out of fear of being jailed. In August 1991, she went to Russia with the help of a "snakehead." The authorities subsequently visited her parents' home a few times to inquire about her whereabouts. They also confiscated some of her personal belongings.

Lin arrived in this country in October 1992. In January 1994, she married Chen Yu, a Chinese citizen residing here, apparently illegally. They have one son, who was born here in August 1997. Lin states that they plan to have more children.

In a decision dated March 8, 2001, the IJ granted Lin's petition for asylum.[1] Although the IJ determined that Lin did not establish past persecution, he nevertheless found her to be credible and determined that she established a well-founded fear of persecution if returned to China. The fear of persecution was based on her participation in the pro-democracy movement, as well as on China's family planning policy.

The government appealed to the BIA. In a decision dated July 17, 2003, the BIA sustained the appeal and reversed the IJ's decision. The BIA initially agreed with the IJ

---

[1]The record indicates that Yu's petition for asylum is still pending.

that Lin did not suffer past persecution. It also did not disturb the IJ's finding of credibility because it concluded that even if Lin were credible, she failed to establish a well-founded fear of persecution if returned to China. According to the BIA, it was "unclear whether the applicant lost her teaching job as a result of her alleged political activities. In any event, although she was unable to find another teaching position, the applicant was able to find other employment without any government interference." (App. at 3). The BIA indicated that Lin was "never detained, physically abused, or even threatened with such treatment by government officials as a result of her alleged political activities." Id. Moreover, it stated that Lin's parents, who allegedly housed the demonstration organizers, continue to reside in China without incident. Lastly, the BIA determined that Lin did not establish a fear of persecution on account of China's family planning policy because: (1) it is unclear whether Lin's child will return to China with her; (2) Lin may not have broken the population control law because the child was born outside of China; and (3) Lin's position that she will have additional children "is merely speculative at this point." Id. at 3-4.

Lin filed a petition for review in this Court. Because the BIA issued its own decision, we review the decision of the BIA, and not that of the IJ. Awolesi v. Ashcroft, 341 F.3d 227, 231 (3d Cir. 2003); Abdulai v. Ashcroft, 239 F.3d 542, 549 (3d Cir. 2001). We must uphold the BIA's decision if it is supported by substantial evidence in the record, sustaining that decision "unless the evidence not only supports a contrary

4

conclusion, but compels it."  Zubeda v. Ashcroft, 333 F.3d 463, 471 (3d Cir. 2003)

(quoting Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001)).

## II.

An alien may be granted asylum "because of persecution or a well-founded fear of

persecution on account of race, religion, nationality, membership in a particular social

group, or political opinion."  8 U.S.C. §§ 1101(a)(42)(A).  Moreover,

> a person who has been forced to abort a pregnancy or to undergo
> involuntary sterilization, or who has been persecuted for failure or refusal to
> undergo such a procedure or for other resistance to a coercive population
> control program, shall be deemed to have been persecuted on account of
> political opinion, and a person who has a well founded fear that he or she
> will be forced to undergo such a procedure or subject to persecution for
> such failure, refusal, or resistance shall be deemed to have a well founded
> fear of persecution on account of political opinion.

8 U.S.C. § 1101(a)(42)(B).

To establish eligibility for asylum based on past persecution, petitioner must show:

"(1) an incident, or incidents, that rise to the level of persecution; (2) that is 'on account

of' one of the statutorily-protected grounds; and (3) is committed by the government or

forces the government is either 'unable or unwilling' to control."  Abdulrahman v.

Ashcroft, 330 F.3d 587, 592 (3d Cir. 2003) (citations and internal quotations omitted).  If

past persecution has not been established, petitioner may still be granted asylum if she

shows that she has a well-founded fear of persecution if returned to her native country.

Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002).  To do so, petitioner must demonstrate

that:  (1) she has a subjective fear of persecution in her native country on account of one

5

of the statutorily enumerated grounds; (2) there is a reasonable possibility of suffering such persecution if she were to return to that country; and (3) she is unable to return to that country because of such fear. 8 C.F.R. § 208.13(b)(2).

The BIA found that Lin did not suffer past persecution in China. We will not disturb this finding because the record surely does not compel a contrary conclusion. We have previously held that "persecution connotes extreme behavior, including 'threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom.'" Ahmed v. Ashcroft, 341 F.3d 214, 217 (3d Cir. 2003) (citation omitted). Here, the allegations that Lin was fired from her teaching position, and that the authorities visited her parents' home to ask about her whereabouts, simply do not amount to persecution.

We will also uphold the BIA's finding that Lin did not establish a well-founded fear of persecution if returned to China. The record does not demonstrate that Lin was ever threatened with or subjected to detention or physical mistreatment on account of her activities relating to the pro-democracy demonstration in 1989. Moreover, as the BIA indicated, Lin's parents, in whose home the two organizers were harbored, have resided in China for the past fourteen years without incident. See In re A-E-M, 21 I.& N. Dec. 1157 (BIA 1998) (noting that the reasonableness of petitioner's fear of persecution is undercut when his family remains in the native country unharmed for a long period of time after petitioner's departure); see also Medhin v. Ashcroft, 350 F.3d 685, 691 (7th

6

Cir. 2003); <u>Aguilar-Solis v. INS</u>, 168 F.3d 565, 573 (1st Cir. 1999); <u>Cuadras v. INS</u>, 910 F.2d 567, 571 (9th Cir. 1990).  In addition, according to the State Department Country Report on China (dated April 14, 1998), "[t]he more remote in time the applicant's political involvement, the less likely he or she would be to face reprisals from the Government."  (App. at 525).  Lin's alleged involvement in the pro-democracy demonstration took place over fourteen years ago, further undermining any contention that she will suffer persecution if she returns to China.

Moreover, there is substantial evidence to support the BIA's conclusion that Lin failed to establish a well-founded fear of persecution based on China's family planning policy.  The Country Report indicates that in the Fuzhou area (where Lin is from), "sterilization or use of the IUD appears to be urged *only for families who have already had two children* or perhaps three (if the first two are girls), even if the extra child was approved."  (App. at 535) (emphasis added).  The Report also notes that although "there are no reports of any national policy" concerning the enforcement of the one-child rule with regard to Chinese parents who have children in the United States, anecdotal information has revealed that "[a]t least some couples that have children in the United States beyond the nominal limits and then return to China are, at worst, given modest fines." (App. at 541).

**III.**

For the foregoing reasons, we will deny the petition for review.