**Perparim DUSHI and Atifete Dushi, Petitioners,**

v.

**John D. ASHCROFT Respondent.**

No. 03–3374.

United States Court of Appeals, Seventh Circuit.

Argued June 16, 2004.

Decided Aug. 30, 2004.

Stephen D. Berman, Chicago, IL, for Petitioners.

George P. Katsivalis, Department of Homeland Security, Office of the District Counsel, Chicago, IL, Thankful T. Vanderstar, Department of Justice, Civil Division, Immigration Litigation, Washington, DC, for Respondent.

Before COFFEY, RIPPLE, and WILLIAMS, Circuit Judges.

## ORDER

Perparim Dushi and his wife, Atifete Dushi, both natives of Kosovo and thus technically citizens of Serbia–Montenegro, petition for review of an order of the Board of Immigration Appeals (BIA) summarily affirming the decision of the Immigration Judge (IJ) denying their applications for asylum, withholding of removal, and relief under the United Nations Convention against Torture. The IJ held that Dushi had failed to prove that he was persecuted before leaving what was then Yugoslavia, or that he had a well-founded fear of persecution if forced to return to Kosovo. Atifete Dushi's application for asylum was derivative of her husband's, so her application was also denied.

Dushi received a notice to appear from the former Immigration and Naturalization Service after his February 1999 application for asylum was rejected. Although Dushi had failed to file by April 1, 1998, see 8 U.S.C. § 1158(a)(2)(B), the IJ excused his late filing under § 1158(a)(2)(D) and held a hearing on his claim for asylum. The following facts are gathered from Dushi's testimony before the IJ.

Dushi, an ethnic Albanian Muslim, was employed in Kosovo as a radio journalist at *Prishtina Radio* from 1981 until 1990. Kosovo was then part of the former Yugoslavia, and though now it is under the control of a provisional government with United Nations (UN) oversight, the final status of Kosovo remains unresolved, and it is still technically a province of Serbia–Montenegro. In a 1990 broadcast, Dushi expressed his opinion that the response of ethnic Albanians to the wave of increasing violence perpetrated against them by Serbs in Kosovo should be peaceful, and that Kosovo should be separate from Serbia but still part of Yugoslavia. Later that same year, the radio station fired Dushi without explanation. Dushi assumes that the Milosevic-controlled government in Belgrade engineered his dismissal because he spoke out against government policy, which viewed Kosovo as a province of Serbia. (However, as Dushi stated in his affidavit in support of his asylum application, and as counsel highlights in his brief on appeal, Dushi was fired along with hundreds of other ethnic Albanian Muslims, resulting in the "closing down" of the "Albanian portion" of the radio station, and this undermines his claim that he was fired as a result of his statements on the air.) Dushi's firing is the core of his asylum claim; though he also was interrogated twice by police after his brother's arrest for political organizing, he was never physically harmed, nor was he ever jailed even though he appeared in court to answer a charge that his view that Kosovo should

not be part of Serbia made him a separatist.

After he was fired from the radio station, Dushi found another position as a radio journalist in 1990, broadcasting for "Radio Zagreb" in Croatia, which by the end of 1990 had taken steps to initiate its eventual independence from Yugoslavia. Though his work as a journalist was unpaid at this time, the position offered him an opportunity to remain informed about the political situation in the former Yugoslavia. He supported himself by working at a restaurant.

Dushi and his wife left Yugoslavia in 1994 to visit her sister and uncle in the United States. According to Dushi, the situation in Kosovo deteriorated drastically after their arrival, so they decided to stay. Once in the United States Dushi learned from an internet news source that three journalists were murdered: Enver Maloku, a politically active journalist and editor at *Prishtina Radio,* in 1998; Xhaenal Mustafa, one of the founders of the newspaper *Rilindja* and the Democratic Alliance of Kosovo, in 1999; and Bekim Kastrati, who worked for the newspaper *The New World,* in 2001. Dushi testified that he believes that all four were killed by Serbs because they were journalists, and that he fears a similar fate should he be returned to Kosovo. Dushi provided no evidentiary support for his belief that these people were killed because they were Muslim or Albanian, or even that they were killed because they were journalists. (As an evidentiary basis for his fear, Dushi submitted into the record two affidavits from former colleagues at *Prishtina Radio,* and one from a former engineering professor in Kosova (before he came to the United States in 1996), attesting to their shared belief that journalists are still endangered in Kosovo despite the presence of the UN peacekeeping mission.)

After hearing Dushi's testimony, the IJ concluded that Dushi had not suffered past persecution because the loss of his job at *Prishtina Radio* was not "sufficiently serious" to constitute persecution. The IJ noted that Dushi presented no evidence that he was prevented from obtaining other employment in his chosen profession. Moreover, the IJ highlighted Dushi's failure to present evidence that he sought out any other paid journalism opportunities, or "made an extensive job search looking for another job as [a] journalist elsewhere in Serbia."

Having rejected Dushi's claim of past persecution, the IJ also concluded that he had not carried his burden of establishing a well-founded fear of future persecution because he presented no evidence that he would be singled out for persecution, or that journalists in Kosovo are facing the same dangers as when Dushi departed. The fact that three of Dushi's colleagues in journalism were killed subsequent to Dushi's departure was unconvincing to the IJ because Dushi had no evidence "that journalists are targeted by the UN forces or by the authorities in Kosovo at this time." The IJ recognized that the county is now policed by a UN-authorized, NATO-led peacekeeping force, and that those in control of the provisional government now share Dushi's separatist political opinion.

Dushi appealed the IJ's decision, and the BIA summarily affirmed without opinion. Accordingly, the IJ's decision became the final decision of the agency for purposes of judicial review. *Mousa v. INS,* 223 F.3d 425, 428 (7th Cir.2000). We will uphold the IJ's decision so long as it is supported by "reasonable, substantial, and probative" evidence in the administrative record as a whole. *See Meghani v. INS,* 236 F.3d 843, 846 (7th Cir.2001).

◼ To qualify for asylum, Dushi was required to show that he is a refugee "by proving that he was persecuted in the past

on account of race, religion, nationality, membership in a social group or political opinion," or alternatively that he has a well-founded fear of future persecution on account of one of these bases. *See Dandan v. Ashcroft*, 339 F.3d 567, 572–73 (7th Cir.2003). Dushi's only argument on appeal is that he established past persecution "as a matter of law" because he was fired from his job as a radio journalist. In order to show persecution on the basis of economic hardship, petitioner must show that he "faces a probability of deliberate imposition of substantial economic disadvantage" on account of some prohibited basis. *Borca v. INS*, 77 F.3d 210, 216 (7th Cir.1996).

Whatever the motive for Dushi's firing, merely losing one's job does not constitute persecution. *Capric v. Ashcroft*, 355 F.3d 1075, 1093 (7th Cir.2004) (holding that termination from job, even in face of other economic hardship, did not constitute persecution, especially considering that economic hardship existed throughout country and petitioner never sought out other work); *Medhin v. Ashcroft*, 350 F.3d 685, 689 (7th Cir.2003) (holding that loss of job due to ethnicity was discrimination but not persecution); *Sharif v. INS*, 87 F.3d 932, 935 (7th Cir.1996) (finding no persecution where petitioner lost job and found another); *Gormley v. Ashcroft*, 364 F.3d 1172, 1178–80 (9th Cir.2004) (holding that loss of jobs as a result of South Africa's post-apartheid Employment Equity Act, and inability to find alternate employment, not persecution); *Barreto–Claro v. United States Attorney .Gen.*, 275 F.3d 1334, 1340 (11th Cir.2001) (holding that losing job as taxi driver and finding only "menial work" not persecution); *cf. Zalega v. I.N.S.*, 916 F.2d 1257, 1260 (7th Cir.1990) (holding that loss of job was "persecution" but not substantial persecution). In addition, the

IJ was correct to question the credibility of Dushi's allegation of economic "persecution" because Dushi's own testimony reveals that he was able to find employment after he was fired. In fact, Dushi was still able to work, albeit unpaid, as a radio journalist.

█ Because Dushi did not establish past persecution, he bore the burden of alternatively establishing that he would suffer persecution if he were to return to Kosovo. *Capric*, 355 F.3d at 1094; *Medhin*, 350 F.3d at 690. However Dushi does not argue on appeal that his asylum claim was still sustainable without the presumption arising from past persecution. Instead he seems willing to rest on his incorrect belief that his firing constituted past persecution, and that he was therefore due a presumption of future persecution. Because this argument is meritless, we deny Dushi's petition for review.