File Name: 05a0324n.06
Filed: April 28, 2005

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

**No. 03-4460**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| IGOR KORNETSKYI, also known as Igor Kornetski; NADEJDA KORNETSKAYA, also known as Nadejda Kornetskya, also known as Naweda Kornetska; OREST KORNETSKYI, also known as Orest Kornetski, | ) ) ) ) ) ) | |
| Petitioners, | ) ) | ON PETITION FOR REVIEW OF AN ORDER OF THE BOARD OF |
| v. | ) ) | IMMIGRATION APPEALS |
| ALBERTO R. GONZALES, Attorney General, | ) ) ) ) ) | |
| Respondent. | | |

Before: BOGGS, Chief Judge; COOK and BRIGHT, Circuit Judges.[*]

COOK, Circuit Judge. Lead Petitioner Dr. Igor Kornetskyi, his wife Nadejda, and son Orest, seek review of a final order of deportation. Because substantial evidence supports the IJ's determination that the Kornetskyis failed to demonstrate eligibility for asylum or withholding of deportation, we deny the petition for review.

---

[*]The Honorable Myron H. Bright, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

I

Dr. Kornetskyi formerly practiced medicine and served as the chief of the radiology department in a Ukraine hospital. From 1985 to 1986, Dr. Kornetskyi treated patients who lived near nuclear plants and suffered from radiation illness, including victims of the Chernobyl disaster. Dr. Kornetskyi contends that members of the Soviet KGB and Secret Police security agents accompanied the patients and warned the doctors against asking questions or discussing the situation. Dr. Kornetskyi's own second-hand exposure to radiation resulted in his being a "carrier," which in turn exposed his family to increased radiation levels. After his son became ill due to such exposure, Dr. Kornetskyi allegedly began openly criticizing—to family, friends, hospital employees, and security officials—the government's conduct in connection with the nuclear radiation. Dr. Kornetskyi maintains that he and his family suffered government persecution because of his criticism. Specifically, he alleges: security officials warned him on multiple occasions to stay quiet, threatening violence, imprisonment, or confinement in an insane asylum if he refused to comply; and KGB and Secret Police interrogated him and his family, searched his home, and kept him under surveillance. Dr. Kornetskyi also insists that his government criticism led to his reassignment to a family-practice clinic eighty miles away, with a resulting loss of status and a thirty-five-percent reduction in pay. As a further consequence of his government denunciation, Dr. Kornetskyi's wife lost her engineering job with the Patent Examination Office.

Dr. Kornetskyi's wife and children obtained passports and United States visitor visas and left Ukraine just before the country declared its independence. Dr. Kornetskyi followed about eighteen months later.

Because Dr. Kornetskyi and his family remained in the United States after their visas expired, the INS initiated deportation proceedings. The Kornetskyis conceded deportability, but maintained that their alleged persecution entitled them to asylum or withholding of deportation. The IJ denied relief, and the BIA summarily affirmed without opinion. Because the Board adopted the IJ's decision in lieu of issuing its own opinion, this court reviews the IJ's decision as the final agency decision. *Abay v. Ashcroft*, 368 F.3d 634, 637-38 (6th Cir. 2004); *Denko v. INS*, 351 F.3d 717, 726 (6th Cir. 2003).

II

Asylum

The Kornetskyis challenge the IJ's denial of their request for asylum. An appellate court must uphold the IJ's determination if "reasonable, substantial, and probative evidence on the record considered as a whole" supports it. *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998) (citations and internal quotation marks omitted). To demonstrate eligibility for asylum, an applicant must first prove that he qualifies as a refugee either because he suffered past persecution or because he has a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *Id*. at 389. If an applicant successfully

establishes past persecution, he is presumed to have a well-founded fear of future persecution rebuttable only by a showing that country conditions "have changed to such an extent that the applicant no longer has a well-founded fear of being persecuted if he were to return." *Id.* (citation and internal quotation marks omitted).

### A. Past Persecution

The IJ concluded that the Kornetskyis failed to satisfy their burden regarding past persecution: "In the instant case, the record does not reveal a level of mistreatment that can be characterized as past persecution based upon one of the statutory categories so as to warrant a finding of statutory eligibility for asylum." Applying the deferential substantial-evidence standard, the court may grant the Kornetskyis' petition for review only if their evidence "'not only supports a contrary conclusion, but indeed *compels* it.'" *Id*. at 388 (quoting *Klawitter v. INS*, 970 F.2d 149, 152 (6th Cir. 1992)).

Though the IJ agreed Dr. Kornetskyi's criticism of the "design, maintenance and utilization of safeguards in the nuclear reactors located in the Ukraine" motivated the government's conduct, she concluded that such criticism was "specific in nature" and did not equate to a political opinion. The Kornetskyis emphatically challenge this conclusion. Regardless, we need not address this issue because, even if Dr. Kornetskyi's criticism constitutes political opinion, the mistreatment he alleges, being more in the nature of harassment, fails the standard we must apply.

The Sixth Circuit holds that "'persecution' within the meaning of 8 U.S.C. § 1101(a)(42)(A) requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch,* 146 F.3d at 390. "Harassment alone . . . does not rise to the level of 'persecution' under the Act." *Id.*

The Kornetskyis' claim that the KGB and Secret Police searched their home, interrogated them, and verbally threatened them amounts to "harassment," not "persecution." *See id.* (finding the petitioner's evidence that the KGB questioned him on several instances, conducted searches of his home and place of business, and knocked on the door of his home for forty minutes beginning at 1:00 a.m. constituted harassment, not persecution); *Borca v. INS*, 77 F.3d 210, 215 (7th Cir. 1996) (upholding the BIA's finding the plaintiff's mistreatment—being interrogated twice, having her dwelling searched twice, and receiving threatening phone calls— "not sufficiently serious to rise beyond the level of harassment"); *Zalega v. INS*, 916 F.2d 1257, 1258-59 (7th Cir. 1990) (upholding the BIA's determination that multiple arrests, interrogations, and searches of the petitioner's home "did not rise to the level of persecution"); *see also Bradciva v. INS*, 128 F.3d 1009, 1012 (7th Cir. 1997).

Dr. Kornetskyi's demotion to the position of family practitioner similarly falls short of persecution. "Economic deprivation constitutes persecution only when the resulting conditions are sufficiently severe." *Daneshvar v. Ashcroft*, 355 F.3d 615, 624 n.9 (6th Cir. 2004) (citations omitted). Dr. Kornetskyi's thirty-five-percent salary reduction does not amount to economic

persecution sufficiently severe to entitle him to asylum. *See Zalega*, 916 F.2d at 1260 (collecting cases and concluding that the petitioner's termination from his employment, difficulty in obtaining additional land for his farm, and inability to get a government job commensurate with his education and training did not constitute persecution). *But see Borca*, 77 F.3d at 216-17 (holding that, while a petitioner must demonstrate that she "faces a probability of deliberate imposition of substantial economic disadvantage on account of her political opinion," she need not show "a deprivation of all means of earning a livelihood").

As regards Mrs. Kornetskyi's job loss, the IJ found no evidence of a nexus between Dr. Kornetskyi's criticism and his wife's termination nearly four years later. Even assuming a connection, Mrs. Kornetskyi's termination cannot suffice to support the family's asylum claim. *See Dushi v. Ashcroft*, 109 Fed. Appx. 801, 804 (7th Cir. 2004) ("[M]erely losing one's job does not constitute persecution") (citation omitted). The Kornetskyis "may have been harassed and may have suffered economic hardships. But harassment and hardship are not the same as persecution." *Capric v. Ashcroft*, 355 F.3d 1075, 1093 (7th Cir. 2004).

### B. Well-Founded Fear of Future Persecution

The IJ similarly rejected the Kornetskyis' claim that they feared future persecution. Because they failed to establish past persecution, the Kornetskyis retained the burden of proving a well-founded fear of future persecution that was both subjectively genuine and objectively reasonable. *Mikhailevitch*, 146 F.3d at 389. The IJ concluded that changed country conditions in Ukraine

precluded the Kornetskyis from satisfying this burden.  The Kornetskyis counter here that the

Government did not present evidence of changed country circumstances.  But the Kornetskyis bore

the burden of presenting evidence that they would be persecuted by Ukraine's current government.

Without such evidence, the Kornetskyis offer nothing to compel us to disturb the IJ's future-

persecution finding.

Because substantial evidence supports the IJ's conclusion that the Kornetskyis neither

suffered past persecution nor have a well-founded fear of future persecution, it follows that the IJ

correctly denied asylum.[1]  And because the Kornetskyis cannot prove eligibility for asylum, they

necessarily fail to satisfy the more stringent standard for withholding of deportation. *Koliada v. INS*,

259 F.3d 482, 489 (6th Cir. 2001).

BIA Affirmance Without Opinion

Finally, the  Kornetskyis challenge the BIA's use of summary-affirmance procedures under

8 C.F.R. § 1003.1(e).  We find nothing improper in the BIA's application of the regulations to this

case.  Moreover, because we review the IJ's decision directly, "our ability to conduct a full and fair

appraisal of [the Kornetskyis'] case is not compromised."  *Denko,* 351 F.3d at 732 (citations and

internal quotation marks omitted).

---

[1]The IJ's single mistaken reference to Yugoslavia instead of Ukraine in its opinion fails to alter our conclusion that substantial evidence supports her determination. Viewing the IJ's reference in context convinces us that the IJ correctly considered Ukraine, not Yugoslavia, in evaluating the Kornetskyis' request for asylum.

Motion to Remand

During the pendency of this petition, the Kornetskyis filed a motion to remand premised on their intent to move the BIA to reopen their proceeding to allow consideration of an application for adjustment of status. A separate panel of this court denied the motion, finding remand unwarranted given the Kornetskyis' ability to pursue relief before the BIA concurrently with the relief sought here. At oral argument, the Kornetskyis again urged remand, seeming to continue to labor under the misconception that the pendency of this appeal foreclosed pursuit of adjustment of status through a motion to reopen. Regulations, however, permit an alien to file a motion to reopen with the BIA even while a petition for review pends. *See* 8 C.F.R. § 1003.2.

III

Because substantial evidence supports the IJ's denial of asylum, we deny the Kornetskyis' petition for review.

No. 03-4460
*Kornetskyi v. INS*

BRIGHT, Circuit Judge, dissenting.

I respectfully dissent. I would hold that the Kornetskyis have demonstrated past persecution, and that the government has failed to rebut the resulting presumption that the Kornetskyis have a well-founded fear of future persecution.

The immigration judge ("IJ") found Dr. Kornetskyi's testimony credible, J.A. at 14, but concluded that the facts Dr. Kornetskyi related did not amount to persecution and that, if they did, the persecution was not for a political reason, Id. at 14-16.

Dr. Kornetskyi testified that over a course of years, state agents persistently followed, accosted, and threatened him because he defied the state by openly criticizing the government. He testified that state agents repeatedly – on at least six occasions – intruded into his home to conduct violent and destructive "searches" the professed purpose of which was only to threaten them for Dr. Kornetskyi's criticism of the government. Id. at 242. He testified that state agents repeatedly threatened to kill him and his wife, or to seal them up in an insane asylum. Id. at 241-42. He testified that the state agents terrified him, his wife, and his children. In addition, he testified that he and his wife suffered economic reprisals.[2]

_____

[2]The IJ misstated the record on two important points: First, she wrote that the only evidence that state agents ever "searched" the Kornetskyis' house came from an affidavit obtained from Mrs. Kornetskyi's aunt. J.A. at 13. This is clearly erroneous. Dr. Kornetskyi testified to these searches in at least two parts of the statement he submitted with his asylum application. The IJ's misstatement on so fundamental a point must greatly undermine confidence in the IJ's grasp of the facts of the case – and renders more troubling the IJ's confusion of Ukraine with Yugoslavia, see slip op., supra, at 6, n.1. Second, the IJ wrote that the asserted persecution occurred entirely before

- 9 -

Persecution does not require physical harm to a person's body.  Cf. Singh v. Ashcroft, 398 F.3d 396, 404 (6th Cir. 2005).  The state's sustained, years-long program of surveillance, interrogation, death threats and physically violent intrusions into their home, in addition to economic reprisals – constitute more than harassment or intimidation.  It was persecution.[3]

This persecution was political in nature.  The state acted against Dr. Kornetskyi because he dared to criticize the government in defiance of government orders to be silent – a fundamentally political act.[4]  See, e.g., Hasan v. Ashcroft, 380 F.3d 1114, 1120 (9th Cir. 2004).

Finally, the government did not rebut the presumption that should arise, that the Kornetskyis have a well-founded fear of future persecution.  The emergence of Ukraine as a formally independent state does not establish that the officials remaining in place will be more tolerant of criticism of the

---

Ukrainian independence, and because of the Soviet KGB.  J.A. at 16.  Dr. Kornetskyi testified, however, that he was visited three times by state agents after independence, and that they questioned and threatened him then.  J.A. at 248.  Dr. Kornetskyi testified also that the actual people in the government who had persecuted him were the same after independence and that their intolerance of criticism and dissent was unchanged, at least as to him.  J.A. at 204, 248-49.

[3]The IJ erred by minimizing Dr. Kornetskyi's allegations, stating that "[T]he respondent's claims seem to consist of his demotion from the head of a department in a regional hospital to that of a family practitioner."  J.A. at 15.

[4]The IJ again misstated the record on another important point, asserting that Dr. Kornetskyi "has failed to articulate a statutory basis upon which this Court could find persecution, if it were so inclined."  J.A. at 15.  This statement was apparently based on Dr. Kornetskyi having left blank the boxes in question four of his asylum application, specifying types of causes for persecution.  See J.A. at 13.  In response to question four, Dr. Kornetskyi instead referred to his lengthy affidavit in support of his asylum request.  Additionally, Dr. Kornetskyi's answer to question two clearly indicated that he was asserting political persecution.  He wrote, "The government . . . regard[s] me and my wife as threats to them and their ability to control the people."  J.A. at 204.

government than they were while under the domination of the now-defunct Soviet Union. Dr. Kornetskyi testified that many of the same local officials remained in place, and that they continued to suppress criticism of the government. The government offered no evidence to rebut, or to nullify, this specific testimony.

I would reverse the IJ's decision that the Kornetskyis are ineligible for asylum.