NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois 60604**

Submitted November 18, 2008
Decided November 24, 2008

**Before**

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 08-1511

| | |
|---|---|
| MUHAMMAD IMRAN, <br>     *Petitioner*, | Petition for Review of an Order of the <br> Board of Immigration Appeals. |
| *v.* | No. A95-925-194 |
| MICHAEL B. MUKASEY, <br> Attorney General of the United States, <br>     *Respondent*. | |

**ORDER**

Muhammad Imran, a native of Pakistan and a Pakistani military officer, entered the United States in 1996 and overstayed his visa. When immigration officials initiated removal proceedings, Imran requested asylum, withholding of removal, and relief under the Convention Against Torture, claiming that the government would punish him for his political involvement with a group supporting Kashmir independence. The Immigration Judge denied Imran's requests, and the Board of Immigration Appeals affirmed. The IJ found credible Imran's fear that Pakistan would prosecute him for violating the military's ban on political activity, but the IJ found no objective evidence that Imran would be treated

worse because of his particular activity – promoting Kashmir independence. Imran petitions this court for review, and we deny the petition.

Imran served in the Pakistani military from 1983 through 1996. He was initially posted in Kashmir, where he became sympathetic to the movement for an independent Kashmir. Starting in 1990, he attended meetings and protests of the Jammu and Kashmir Liberation Front ("JKLF") and helped raise $2,500 on its behalf, though he did not officially become a member of the group. In December 1995 Imran attended a large rally in support of the JKLF in Rawalpindi, Pakistan. The rally grew wild, and police responded by firing tear gas and rifle shots into the air. After the rally, agents from Inter-Services Intelligence called Imran multiple times to ask him about his involvement with the JKLF. The agents warned him that Pakistani law prohibited members of the military from engaging in any political activities. Imran became concerned that the army would discharge him or he would face criminal proceedings.

Without resigning from the military, Imran entered the United States on May 1, 1996 on a six-month non-immigrant visitor visa, which he overstayed. In 2003 immigration authorities began removal proceedings. Imran conceded removability, but requested asylum, withholding of removal, and relief under the Convention Against Torture. During his removal hearing, Imran predicted, based on the call that he had received from the intelligence agency and the human-rights violations in the country, that the government would severely prosecute him for his pro-Kashmir activities or for deserting the military. On April 3, 2006, the IJ issued an oral decision denying Imran's applications for relief.

Though the IJ found Imran's account of historical events credible, it concluded that his testimony did not support the relief he sought. First, the IJ found Imran ineligible for asylum, as he failed to file an application within one year of his 1996 arrival in the United States and had not offered any extraordinary circumstances that might excuse the delay. Next, the IJ found that the intelligence agency's phone calls to Imran did not rise to the level of past persecution since they merely advised him that he could be sanctioned for breaking a military rule, one that applied to involvement with any political party. The IJ also found no evidence of probable future persecution, as Imran did not show any likelihood that the government would disproportionately punish him on account of his political opinion or for his desertion. Finally, the IJ found that Imran had not shown that Pakistan would subject him to torture and therefore denied Convention Against Torture relief.

In affirming the IJ's decision, the BIA agreed that Imran showed no past persecution or objective probability of future persecution. The BIA noted that even if the government disciplined Imran for his desertion or violation of military rules, that would not constitute

persecution on a forbidden ground.  It concluded that Imran had not shown that he would be punished or tortured based on his political opinion if he returned to Pakistan.

In his petition for review, Imran challenges only the IJ and BIA's denial of his application for withholding of removal.  He argues that the IJ did not base its decision on substantial evidence, that human rights conditions in Pakistan corroborated his testimony, and that the IJ should have found that his likely punishment upon returning to Pakistan would be greater than that of other errant soldiers because of the army's special dislike of the JKLF.  Because the BIA adopted and affirmed the IJ's decision, we review the IJ's conclusions and any supplemental reasoning of the BIA.  *Liu v. Ashcroft*, 380 F.3d 307, 311 (7th Cir. 2004).  We will uphold the IJ's decision so long as it is supported by substantial evidence, and will overturn it "only if the record compels a contrary result."  *Mema v. Gonzales*, 474 F.3d 412, 416 (7th Cir. 2007).

Imran argues that because the IJ found his testimony about past events credible, the IJ erred in concluding that Imran's fear of future persecution did not support withholding of removal.  It is true that the IJ did not doubt that Imran genuinely feared returning to Pakistan.  But a subjective fear is not enough; Imran had to show objectively that it was more likely than not that, if returned to Pakistan, he would be persecuted on the basis of his political opinion.  *See* 8 U.S.C. § 1231(b)(3)(A); *Irasoc v. Mukasey*, 522 F.3d 727, 729 (7th Cir. 2008).  That means Imran had to show that he would probably be subject to harsher punishment than other violators of military's ban on political activity specifically because of his race, religion, nationality, membership in a particular social group, or (as is relevant to this case) political opinion. *See, e.g., Ghebremedhin v. Ashcroft*, 385 F.3d 1116, 1120 (7th Cir. 2004) (finding persecution when the government singled out Jehovah's Witnesses who were conscientious objectors for harsher treatment); *Vujisic v. I.N.S.*, 224 F.3d 578, 581 (7th Cir. 2000) (finding persecution where the government singled out and beat a draft evader because of his cultural background); *cf. Djedovic v. Gonzales*, 441 F.3d 547, 549 (7th Cir. 2006) (finding no persecution where petitioner did not show that Moslem deserters were treated worse than other deserters).

In this case Imran provided no evidence that, of all politically active military personnel or army deserters, the Pakistani government disproportionately targets those involved with the JKLF.  For example, he failed to provide any statistics or even anecdotes that military personnel could with impunity be freely politically active in other political parties.  Indeed, Imran openly conceded that the prohibition on political activism equally covered involvement with any political party.  On this record, therefore, the IJ did not err in concluding that Imran's subjective fears, in the absence of further evidence that Pakistan would single him out for his political belief, were insufficient.

Imran next argues that the poor human-rights conditions detailed in the 2005 State Department Country Report for Pakistan corroborates that his punishment will be disproportionate to that of other military violators. This contention is also without merit. Even if the State Department finds violations of human rights in Pakistan, they do not amount to persecution unless they are targeted against specific groups. *Ahmed v. Gonzales*, 467 F.3d 669, 673 (7th Cir. 2006). In his brief, Imran does not indicate how the conditions in Pakistan put him at particular risk because of his political opinion; rather, he asserts that the conditions affect him because he is a deserter who will likely be arrested. These concerns would apply equally to any deserter regardless of political affiliation and do not show that Imran would be subjected to persecution. The report, therefore, does not justify relief. *Medhin v. Ashcroft*, 350 F.3d 685, 689-90 (7th Cir. 2003).

Imran's final contention is that both the IJ and the BIA mischaracterized his situation as a probability of prosecution for desertion or political activity rather than of persecution for political opinion. But the IJ found that Imran "failed to establish that it is more likely than not that he would be persecuted on account of his political opinion" or "be treated in a disparate manner given his support of the JKLF." The judge went on to explain that "there is no assertion ... to show that supporters of the JKLF are treated more harshly than supporters of other political parties." The BIA, too, found no evidence that Imran would experience punishment "disproportionate to that experienced by average military personnel who break the rules" or be "held accountable for his participation in political activities." Thus the IJ and BIA both addressed Imran's arguments about persecution for political opinion.

The IJ correctly found that Imran did not meet the requirements for withholding of removal, and so his petition for review is

DENIED.