In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 05-2051

SHUKRIA S. MARGOS,

*Petitioner*,

*v.*

ALBERTO R. GONZALES,

*Respondent.*

_____

Petition for Review of an Order
of the Board of Immigration Appeals
No. A 95 592 186

_____

SUBMITTED JANUARY 11, 2006[Œ]—DECIDED APRIL 5, 2006

_____

Before FLAUM, *Chief Judge*, and EASTERBROOK and MANION,
*Circuit Judges.*

MANION, *Circuit Judge.* Shukria Margos, an Iraqi citizen,
petitions for review of the Board of Immigration Appeals'
decision denying her asylum and withholding of removal.
We deny the petition for review.

_____

[Œ] Pursuant to our order of January 5, 2006, this appeal is submit-
ted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

**I.**

Shukria Margos, sixty-one, is an Assyrian Christian from Kirkuk, Iraq. She was married and had four children, three sons and a daughter. From 1974 to 1998, she worked in the x-ray department of a hospital, which, for many years during the later portion of her tenure, was owned by the Iraqi government. On the side, she worked as a cook. She did so first for some doctors that she knew, and they later recommended her culinary skills to members of the then-governing Ba'ath party. Beginning in 1988, high-ranking Ba'ath party officials—some close to Iraq's former leader, Saddam Hussein—intermittently hired her as a cook for their parties and other events. Her catering enterprise with the Ba'ath officials stopped either in 1991, 1993, or 1998; the imprecision is due to Margos's conflicting accounts. Additionally, in 1998, officials offered her a position cooking for two of Hussein's children, but she declined because she was generally scared of the situation and told them she was too old to do the job.

Separately, two of Margos's sons served in the Iraqi army during the Persian Gulf War. In 1991, they returned to Kirkuk, and, according to Margos, the Iraqi authorities accused the two of being deserters. The authorities detained the two for a period but released them when the authorities lost control of Kirkuk during a Kurdish uprising in the northern regions of Iraq. The two sons then fled, and Margos has not heard from them since. She does not know where they went or where they are. When the Iraqi authorities regained control of Kirkuk, the authorities came looking for the two sons. Not finding them, the authorities, according to Margos, arrested her husband on the belief that he knew the two sons' whereabouts. Margos maintains that the authorities held her husband for six months, tortured him,

caused him to lose his memory, and then returned him, dumping him on the doorstep of the Margos home. Her husband died of his injuries some two years later in 1995 or 1996; Margos cannot recall the precise year.

Independent from her commercial dealings with high-ranking Ba'athists, Margos had her own encounters with the Iraqi authorities. The timing of the following events is obscure. In one episode, while riding on a bus, Margos physically assaulted a woman and attempted to throw her from the bus. The woman verbally provoked Margos's rage by calling Margos a "Bush supporter" in reference to the first President Bush. The basis for the woman's "accusation" is unstated, but Margos's assault led to a police interrogation at police/security headquarters. Margos suffered one or more broken ribs after being struck by the butt of a gun. Further, according to Margos's testimony, the authorities asked her why being called a Bush supporter made her so angry, and, when she offered an uncooperative response, they threatened to slit her tongue. Importantly, Margos's testimony does not indicate that the authorities acted because they believed she was a Bush supporter. Rather, it appears to have been a routine, albeit oppressive, law enforcement inquiry in which the authorities attempted to determine why she assaulted the other passenger.

Margos was taken into headquarters on one other occasion and was interrogated, without injury, about her two missing sons. The authorities also visited her house on multiple occasions to ask about the same two sons, threatening her with jail if she did not turn them in, but the authorities never acted on their threats. Further, in one visit, the authorities questioned Margos about her attendance at her sister's wedding in Erbil, Iraq (also spelled Irbil or Arbil), a city north of Kirkuk where Margos was

born. The city also happened to be in the former no-fly zone and apparently outside the control of the Iraqi authorities, thereby providing the basis for the questioning. Other than the harassing nature of these house visits, Margos did not report any harm during or as a result of these visits.

Eventually, Margos "got tired" of these visits, and this prompted her to obtain an Iraqi passport and leave Iraq in 1998, which is about when she declined the cooking position with the two Hussein children. She moved to Jordan, where her third son lived. Nonetheless, Margos overstayed her visa and was unable to pay the resulting Jordanian fines. Consequently, in 2002, Jordan deported Margos, and she then came to the United States on a visitor's visa. She settled in the Chicago area where some of her relatives lived. As for Margos's daughter, she was last known to be living in Erbil, but Margos has had no contact with the daughter or Margos's other relatives in Erbil since Margos left Iraq for Jordan. Further, the one son in Jordan recently immigrated to Australia.

Margos entered the United States as a nonimmigrant visitor for pleasure and was authorized to remain here for six months. Later, the United States government commenced removal proceedings against Margos because she remained beyond her end date without authorization. Before an immigration judge, Margos conceded removability but sought asylum and withholding of removal. After a hearing, at which Margos testified, the immigration judge denied her application for asylum and withholding of removal. She appealed to the Board of Immigration Appeals ("BIA"). The BIA affirmed, and Margos now petitions this court for review.

**II.**

To qualify for asylum, Margos must show that (1) she suffered past persecution in Iraq on account of her race, religion, nationality, membership in a particular social group, or political opinion, or (2) she has a well-founded fear of future persecution in Iraq on account of one or more of those same five enumerated grounds. *See* 8 U.S.C. §§ 1101(a)(42)(A), 1158(b); *Jamal-Daoud v. Gonzales*, 403 F.3d 918, 922 (7th Cir. 2005); *Oforji v. Ashcroft*, 354 F.3d 609, 613 (7th Cir. 2003). "Persecution" in this context generally refers to punishment or substantial harm—mere harassment is not enough. *See Firmansjah v. Gonzales*, 424 F.3d 598, 605 (7th Cir. 2005); *Prela v. Ashcroft*, 394 F.3d 515, 518 (7th Cir. 2005); *Oforji,* 354 F.3d at 613. "Persecution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Firmansjah*, 424 F.3d at 605 (quotation omitted).

Our review here is limited to determining whether the denial is supported by substantial evidence, meaning we will uphold the denial so long as it is supported by "reasonable, substantial, and probative evidence on the record considered as a whole." *Koval v. Gonzales*, 418 F.3d 798, 804 (7th Cir. 2005) (quotation omitted). "Only where the evidence in support of the application is so compelling that no reasonable factfinder could fail to find the requisite fear of persecution will we reverse the [BIA's] decision for lack of evidence." *Jamal-Daoud*, 403 F.3d at 922. In sum, "we are not at liberty to overturn the [BIA's] determination simply because we would have decided the case differently." *Id.*

Before turning to the merits, we add a brief word on Margos's credibility. After finding that Margos failed to establish persecution, the immigration judge noted discrepancies in her testimony and the record. The immigration

judge, however, did not explicitly state that Margos lacked
credibility. For its part, the BIA found it unnecessary
to address the credibility issue, ruling that, even if cred-
ible, Margos failed to show that she was eligible for
asylum or withholding of removal. Consequently, we do not
have an adverse credibility determination to review. *See
Zheng v. Gonzales*, 409 F.3d 804, 809 (7th Cir. 2005); *see also
Kayembe v. Ashcroft*, 334 F.3d 231, 234-35 (3d Cir. 2003). We
thus accept Margos's version of events as credible.

Reviewing her past persecution claims, Margos testified
that the authorities broke one or more of her ribs during one
interrogation and threatened her with additional physical
harm in the course of that interrogation. This episode,
however, followed her own physical assault on a female bus
passenger. Margos herself testified that she attempted to
throw this woman from the bus. It is true that the other
woman called Margos a Bush supporter and that the
authorities asked Margos why that allegation enraged her.
However, Margos offers no evidence to show that she was
treated differently from any other Iraqi who had committed
a similar assault without being called a Bush supporter.
Margos's testimony, taken as credible, does not demonstrate
that the authorities acted because they believed she was a
Bush supporter and political opponent of the regime.
Rather, their pursuit and interrogation of Margos was
triggered by her physical attack. Her injury and their threats
were incident to the police interrogation and her uncoopera-
tive conduct during that interrogation, not any perceived
political opposition to the ruling Ba'athists (a regime which
is no longer in power, but more on that point below).
Therefore, even when her testimony is viewed to be credi-
ble, it is reasonable to find that these events do not establish
political persecution.

Margos also testified that the authorities repeatedly questioned her about the whereabouts of her two missing sons and once questioned her about her travel to the no-fly zone. Harassing interrogations, such as these, rarely rise to the level of persecution. *See Prela*, 394 F.3d at 518. Furthermore, according to Margos's testimony, the basis of this questioning was her sons' desertion, their corresponding disappearances, and her travel into a restricted area. As such, the action by the authorities here were not on account of race, religion, nationality, membership in a particular social group, or political opinion. *See Djouma v. Gonzales*, 429 F.3d 685, 686, 688 (7th Cir. 2005) (asylum unwarranted when the Chadian government's only interest in petitioner was his possible knowledge of his dissident uncle's whereabouts); *Vujisic v. INS*, 224 F.3d 578, 581 (7th Cir. 2000) ("refusal to perform military service in one's native country is not ordinarily a valid basis for establishing asylum eligibility" (quotation omitted)); *Abedini v. INS*, 971 F.2d 188, 191 (9th Cir. 1992) (". . . the long-standing rule that it is not persecution for a country to restrict travel abroad or require military service of its citizens."). Moreover, even if her husband or sons suffered because of one or more of the enumerated grounds (and not simply due to the desertions as she testified), Margos "cannot rely solely on the persecution of her family members to qualify for asylum." *Ciorba v. Ashcroft*, 323 F.3d 539, 545 (7th Cir. 2003) (citing *Tamas-Mercea v. Reno*, 222 F.3d 417, 424 (7th Cir. 2000)).

Meanwhile, Margos had steady employment at a hospital owned by the Iraqi government. This continued government employment is an indication that she was not suffering persecution at the hands of this same government. *Cf. Capric v. Ashcroft*, 355 F.3d 1075, 1084 (7th Cir. 2004) (severe economic deprivation can constitute persecution). She also had favorable commercial relations with Ba'ath party

officials for whom she occasionally cooked (though it is unclear if this association was operating after her sons deserted and the questioning began). For these reasons, the immigration judge's determination, adopted by the BIA, that Margos did not establish past persecution on account of race, religion, nationality, membership in a particular social group, or political opinion, was supported by substantial evidence.

Turning to future persecution, Margos argues that, due to her and her family's adverse encounters with the Hussein-controlled government, including her sons' desertion and her decision not to become a cook for the Hussein children, she is a perceived political opponent of that regime. Therefore, she reasons that, since the Hussein/Ba'athist regime "was one of if not the most brutal regimes in the world," she has a well-founded fear of future persecution upon her return to Iraq. This argument, however, has been surpassed by events. The immigration judge took administrative notice of the fact that the Hussein regime and its control of Iraq ceased as of April 2003. With Margos's claimed potential tormentors now dead or at least out of power, her fear of the former regime does not justify asylum. *See Vaduva v. INS*, 131 F.3d 689, 692 (7th Cir. 1997) (asylum "unnecessary" due to dramatic change in post-communist Romania); 8 C.F.R. § 1208.13(b)(1)(i)(A). Although the terror groups that continue to threaten parts of Iraq no doubt include displaced Ba'athists, Margos's exposure would be no greater than that of other Iraqi citizens given the regime change.

Margos also argues that, as an Assyrian Christian, she would face a pattern and practice of ethnic and religious persecution in Muslim-dominated Iraq, contending that conditions have worsened since the fall of the Hussein regime. *See* 8 C.F.R. § 1208.13(b)(2)(iii). Ironically, under

the Hussein's iron fist, Assyrian Christians and similar minorities were arguably better off as their dictator did not tolerate factional strife and civil unrest within "his" country (unless it furthered his own ends). The government here, however, maintains that Margos did not present this argument to the BIA and that this failure to exhaust administrative remedies precludes our review. *See* 8 U.S.C. § 1252(d)(1); *Hamdan v. Gonzales*, 425 F.3d 1051, 1059 n.14 (7th Cir. 2005). Tellingly, Margos did not file a reply brief to refute the government's exhaustion argument and argue that she had properly preserved this issue. *See Medhin v. Ashcroft*, 350 F.3d 685, 689 (7th Cir. 2003). What is more, the record supports the government. In her appellate statement and notice of appeal to the BIA, Margos identified herself as an Assyrian Christian and, in general terms, indicated that Iraq is an unsafe place for Assyrian Christians. Beyond those generalities, however, Margos did not articulate a pattern and practice argument. Specifically, through text or citation, she did not claim that state actors were perpetrating or tolerating a systematic, pervasive, or organized effort to kill, imprison, or severely injure Assyrian Christians. *See Mitreva v. Gonzales*, 417 F.3d 761, 765 (7th Cir. 2005). Without a semblance of an argument before it, it is not surprising that the BIA did not discuss the matter.[1] Of more immediate importance, Margos's failure to exhaust administrative remedies here means that we lack jurisdiction to consider her pattern and practice argument. *See Hamdan*, 425 F.3d at 1059 n.14.

Even if we had jurisdiction to consider this argument, it would fail for several reasons. To start, Margos

---

[1] Notably, according to the record and the briefs before us, Margos has not filed a motion to reopen her proceedings based upon changed country conditions. *See* 8 C.F.R. § 1003.23(b)(4)(i).

heavily relies on publications outside of the administrative record which we cannot consider. *See* 8 U.S.C. § 1252(b)(4)(A); *Yadegar-Sargis v. INS*, 297 F.3d 596, 599 n.1 (7th Cir. 2002). Nevertheless, it is no secret that the turmoil in present-day Iraq makes it (or at least its metropolitan areas such as Baghdad and Kirkuk) an unsafe and undesirable place to live. Nonetheless, "unpleasant and even dangerous conditions do not necessarily rise to the level of persecution." *Prela*, 394 F.3d at 518 (quotation omitted). It is unsafe, moreover, for the general population, not just Assyrian Christians. Recent State Department country reports, which we could judicially notice, *see Pelinkovic v. Ashcroft*, 366 F.3d 532, 540 (7th Cir. 2004), recount numerous terrorist bombings of churches as well as numerous terrorist bombings of mosques. Iraqis of all faiths have experienced heavy doses of violence and discrimination. This random violence against the general population, furthermore, is being perpetrated by domestic and foreign terrorists, not the Iraqi government. The Iraqi government, according to the 2005 country report issued on March 8, 2006, is committed "to equal treatment for all religions and ethnicities" and has taken significant steps to thwart the terrorists for the benefit of all its citizens, including Assyrian Christians. This is not a case in which the government at issue is unwilling and completely unable to afford protection. *Cf. Hor v. Gonzales*, 421 F.3d 497, 502 (7th Cir. 2005) (petitioner established persecution by showing that the Algerian government was incapable of protecting him, effectively telling him that he would have to protect himself). Consequently, Margos cannot establish persecution in this regard. *See Mitreva*, 417 F.3d at 764-66 (collecting cases); *Hor v. Gonzales*, 400 F.3d 482, 485-86 (7th Cir. 2005) ("Persecution is something a government does, either directly or by

abetting (and thus becoming responsible for) private discrimination by throwing in its lot with the deeds or by providing protection so ineffectual that it becomes a sensible inference that the government sponsors the misconduct.") (collecting cases).

Next, Margos maintains that, due to humanitarian concerns, she is entitled to "asylum as a matter of discretion." *See* 8 C.F.R. § 1208.13(b)(1)(iii); *Brucaj v. Ashcroft*, 381 F.3d 602, 609 (7th Cir. 2004). To the extent Margos is asking this court to exercise its discretion and grant her asylum, her argument is misguided. The discretion to which Margos refers rests with the executive branch, not the judiciary. *See* 8 U.S.C. § 1158(b)(1)(A); *Brucaj*, 381 F.3d at 609; *Rhoa-Zamora v. INS*, 971 F.2d 26, 29 (7th Cir. 1992). To the extent Margos is attempting to claim that the BIA and immigration judge did not adequately consider this matter, *see, e.g.*, *Brucaj*, 381 F.3d at 609, she again failed to exhaust administrative remedies. The record reveals that Margos did not raise this § 1208.13(b)(1)(iii) argument to the immigration judge, and, for certain, Margos did not present this claim to the BIA. Therefore, we lack jurisdiction to consider this argument as well. *See Hamdan*, 425 F.3d at 1058 n.14.

For all of these reasons, we affirm the denial of asylum. Further, because Margos has failed to meet the more lenient burden of proof for asylum, she cannot establish a "clear probability" of persecution, the standard for withholding of removal under 8 U.S.C. § 1231(b)(3). *See Hussain v. Gonzales*, 424 F.3d 622, 630 (7th Cir. 2005); *Prela*, 394 F.3d at 519.

Finally, before this court, Margos seeks relief under the Convention Against Torture ("CAT"). *See* 8 C.F.R. §§ 1208.16-18. Although it does not appear that Margos raised this claim before the immigration judge, the immigration judge's decision included a single sentence

stating that Margos was not entitled to CAT relief. Nonetheless, on appeal, Margos did not present any CAT arguments to the BIA. Therefore, due to this failure to exhaust administrative remedies, we do not have jurisdiction to consider this CAT claim. *See Hamdan*, 425 F.3d at 1058 n.14; *Olujoke v. Gonzales*, 411 F.3d 16, 22-23 (1st Cir. 2005) (CAT claim at issue). Separately, we add that "torture," as defined in 8 C.F.R. § 1208.18(a) for CAT purposes, constitutes an extreme form of oppression not indicated here; as Margos fell short of establishing persecution, she cannot, on this record, meet the more difficult standard of establishing a likelihood of torture in order to obtain CAT protection. *See Hussain*, 424 F.3d at 630; *Prela*, 394 F.3d at 519.

### III.

There is no doubt that Iraq is a much less desirable place to live than the United States. However, the record before us does not show that Margos is entitled to the relief she now seeks. Accordingly, for all the reasons discussed above, the petition for review is DENIED and, where noted, is DISMISSED for lack of jurisdiction.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*