**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 12, 2006
Decided July 26, 2006

**Before**

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 05-2969

| | |
|---|---|
| DASMIR AHMEDI, | Petition for Review of an Order of the Board of Immigration Appeals |
| *Petitioner*, | |
| | No. A78-959-974 |
| v. | |
| ALBERTO R. GONZALES, | |
| *Respondent*. | |

**ORDER**

Dasmir Ahmedi, a citizen of Macedonia, entered the United States without inspection near Hidalgo, Texas, in May 2002. Following his discovery by INS officials, Ahmedi applied for asylum and withholding of removal on the ground that he had been persecuted by Macedonian police on account of his ethnicity and political opinion and feared being tortured if returned to Macedonia. After a removal hearing, an IJ concluded that Ahmedi had failed to establish either past persecution or a well-founded fear of future persecution. The BIA summarily affirmed. Ahmedi petitions for review, and we deny the petition.

At his removal hearing in 2004, Ahmedi testified that he is an ethnic-Albanian who lived with his wife and two children in Kollar, Macedonia, until police began "asking us too many questions." R.82. He explained that in 1995 Macedonian authorities caught his father smuggling bombs into Macedonia from Albania. His father spent one night in jail while police searched his home, but, when they found no contraband they released him and ordered him to pay a fine. Although his father never told Ahmedi why he had the bombs, Ahmedi surmised that the police thought his father was carrying weapons for the National Liberation Army ("NLA").[1] After his father's arrest, police started "mistreating" the family. R.86. For example, Ahmedi recounted, police would come to his father's restaurant, where Ahmedi worked, and vandalize its windows or ask him questions about the NLA. Police would also stop him and his father for questioning as they walked home from work or while they cut wood in the forest. During one incident, Ahmedi said, police pushed him. Consequently, in March 2002 Ahmedi left Macedonia, traveling through Bulgaria, the Netherlands, Ecuador, and Mexico, and arrived in the United States two months later.

Ahmedi testified that he fears the police will arrest and beat him if he returns to Macedonia. He explained that his father, who still lives in Kollar, told him that police have come to the house to ask about him. He is afraid of the police because, according to Ahmedi, even though the political party his family supported is now part of Macedonia's ruling coalition government, "the situation is not really calm because . . . the other parties that have lost are trying to damage the other people." R.93. He elaborated that he believes the losing parties want to "gather" their opponents and ask them questions "like why didn't you support our party in the past." R.94-95. In addition, Ahmedi said, the current government is "still putting pressure" on his father by asking him whether he is hiding any weapons. R.94.

The IJ denied Ahmedi's application for asylum. The IJ credited Ahmedi's testimony but nevertheless determined that he had failed to establish past persecution because the incidents Ahmedi described did not rise to the level of persecution. Similarly, the IJ concluded that Ahmedi failed to establish a well-founded fear of future persecution. The IJ reasoned that Ahmedi's fear of "continued questioning" by Macedonian authorities "is not a valid basis for a claim

---

[1] The National Liberation Army rebelled against the Macedonian government in February 2001 in an effort to gain equal rights for the large ethnic-Albanian community that "traditionally felt treated as second-class citizens." R.107-08. In August of that year, however, the NLA settled its differences with the government and by September 2002 reformed into a political party that now participates in the ruling coalition government.

of future persecution." R.57-58. The IJ explained, Ahmedi's fear of "police brutality" was not reasonable given that his father, "the individual actually arrested and prosecuted for possession of bombs," continued to live unharmed in Macedonia. R.59-60.

Where, as here, the BIA adopts the IJ's reasoning without opinion, we review the IJ's decision directly and must uphold the denial of asylum so long as that decision is supported by substantial evidence. *Galicia v. Gonzales*, 422 F.3d 529, 535 (7th Cir. 2005). Under the substantial evidence standard, an applicant must demonstrate that the record not only supports, but compels, reversal of the IJ's decision. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); *Medhin v. Ashcroft*, 350 F.3d 685, 689 (7th Cir. 2003).

Ahmedi first challenges the IJ's determination that he failed to establish past persecution. He argues that the IJ applied "an overly narrow interpretation of the term 'persecution'" and insists that repeated interrogations and harassment by the Macedonian security forces constitutes persecution. Petr.'s Br. 14.

To qualify for asylum Ahmedi was required to establish that he is a refugee under 8 U.S.C. § 1101(a)(42)(A). *See Musabelliu v. Gonzales*, 442 F.3d 991, 994 (7th Cir. 2006). A refugee is a person who is "unable or unwilling to return to [his home country] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *see Gjerazi v. Gonzales*, 435 F.3d 800, 807-08 (7th Cir. 2006). "Persecution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional," and does not include mere harassment. *Margos v. Gonzales*, 443 F.3d 593, 597 (7th Cir. 2006) (quoting *Firmansjah v. Gonzales*, 424 F.3d 598, 605 (7th Cir. 2005)).

Substantial evidence supports the IJ's determination that Ahmedi's encounters with the Macedonian police did not constitute past persecution. Ahmedi was questioned in public settings when he was with his father, but he was never arrested, jailed, or threatened. Only once was there even physical contact when he was pushed. This is harassment, not persecution. *See, e.g., Ciorba v. Ashcroft*, 323 F.3d 539, 545 (7th Cir. 2003) (concluding that monthly questioning by police and periodic home searches constituted harassment, not persecution); *Yadegar-Sargis v. INS*, 297 F.3d 596, 602 (7th Cir. 2002) (concluding that being stopped by police, interrogated and forced to the back of ration lines constituted harassment, not persecution); *Mousa v. INS*, 223 F.3d 425, 430 (7th Cir. 2000) (concluding that regular questioning and surveillance by police constituted harassment, not persecution); *see also Prela v. Ashcroft*, 394 F.3d 515, 518 (7th Cir. 2005) (finding no persecution where applicant was repeatedly interrogated by police but detained only once for 24 hours and beaten).

Ahmedi also contends that the IJ erred when she failed to give sufficient weight to country reports that, Ahmedi insists, show that Macedonian police "regularly use torture and deny basic civil rights to ethnic-Albanians." Petr.'s Br. 18. Because conditions have not improved "at the street level" since he left, Ahmedi contends, police will continue questioning him about his involvement with the NLA. *Id*. at 18-19. Then, when he denies knowledge of its activities, his answers will "no doubt cause a ratcheting-up of the interrogation, during which [he] would face the possibility of torture." *Id*.

Because Ahmedi failed to establish past persecution, he does not gain the presumption of a well-founded fear of future persecution. *See* 8 C.F.R. § 208.13(b); *Tolosa v. Ashcroft*, 384 F.3d 906, 908 (7th Cir. 2004). He therefore was required to prove that he genuinely fears persecution on account of an enumerated ground if returned to Macedonia and that his fear is objectively reasonable. *See Jamal-Daoud v. Gonzales*, 403 F.3d 918, 922 (7th Cir. 2005).

Substantial evidence supports the IJ's determination that Ahmedi failed to establish a well-founded fear of future persecution. Ahmedi contends that, despite the government's "efforts to reform," Macedonian security forces still "employ abusive tactics such as beatings and torture" to conduct their investigation. Petr.'s Br. 23. In support, Ahmedi submitted country reports that purportedly document extreme civil rights abuses perpetrated by the Macedonia police against ethnic-Albanian targets. Indeed, the reports recount isolated occurrences of police misconduct, but they also reveal that conditions for ethnic minorities continue to improve and that Macedonian authorities detain former NLA members only for long enough to verify that they did not commit war crimes. And current country reports indicate that there were "no reports that the government or its agents committed arbitrary or unlawful killings," "no reports of politically motivated disappearances," and "no reports of political prisoners." U.S. Dep't of State, Bureau of Democracy, Human Rights, and Labor, *Macedonia Country Reports on Human Rights Practices - 2005* (Mar. 2006).[2] Thus, Ahmedi's fear of persecution if he returns to Macedonia is not objectively reasonable.

Moreover, Ahmedi did not establish that he will be "singled out for persecution." *See Bradvica v. INS,* 128 F.3d 1009, 1013 (7th Cir. 1997) (explaining that applicant must show he will be singled out for persecution on account of an enumerated ground). Ahmedi insists that he has been "targeted" for persecution because Macedonian security forces "have personally sought him out at his home" and "know his name." Petr.'s Br. 21. But he produced evidence supporting only his

---

[2] We may take judicial notice of country conditions documented in State Department reports not considered by the IJ. *See Margos*, 443 F.3d at 599.

contention that authorities may want to question him upon his return and that his father, who, the IJ noted, is the person who initially earned the government's attention, remains in Macedonia subject only to occasional police questioning. Thus any suggestion that Ahmedi will be singled out for anything more than questioning is pure conjecture.

Because government action that does not rise to the level of persecution cannot form the basis for a well-founded fear of future persecution, *see Ciorba*, 323 F.3d at 545-56, nothing in the record compels reversal of the IJ's decision.

DENIED