UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued January 24, 2006
Decided July 31, 2006

**Before**

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 05-2284

| | |
|---|---|
| BALWINDER SINGH,<br>    *Petitioner*, | Petition for Review of a Decision of<br>the Board of Immigration Appeals |
| *v.* | No. A79-097-515 |
| ALBERTO R. GONZALES,<br>Attorney General of the United States,<br>    *Respondent*. | |

**O R D E R**

Indian national Balwinder Singh petitioned for review of the Board of Immigration Appeals' decision denying his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").  The Immigration Judge ("IJ") found his testimony not credible, and the Board of Immigration Appeals ("BIA") affirmed.  Because the credibility determination was not supported by cogent reasons with a legitimate nexus to the finding, we grant the petition.

## I.

Singh arrived at the Miami International Airport in February 2001 and was arrested for attempting to enter the United States without a visa. Shortly afterwards, he was given a Notice to Appear before an IJ and released. He petitioned for asylum in January 2002—which means that his case is not affected by the revised credibility standards of the REAL ID Act of 2005, *see* Pub. L. No. 109-13, 119 Stat. 231. The new standards are applicable to petitions for asylum made on or after May 11, 2005. *Id.* at § 101(h)(2). *See also Diallo v. Gonzales*, 439 F.3d 764, 766 n.1 (7th Cir. 2006); *Dawoud v. Gonzales*, 424 F.3d 608, 613 (7th Cir. 2005).

Before the IJ, Singh testified that he was afraid of being beaten or killed if he remained in India because his father played a leadership role in the Akali Dal (Amritsar) party and was responsible for agitation against the Indian government. Akali Dal (Amritsar) is a religio-political organization devoted to advancing the rights of the Sikhs in Punjab. The ultimate goal of the party is to establish a separate theological state. According to Singh, both his father and grandfather were members of the party. Singh's father had been president for the Punjabi district of Ropar since 1993, and as such, had hosted a number of "processions" and rallies on behalf of the party.

Singh, like all the rest of his family, was an adherent of the Sikh religion. But he was not a member of Akali Dal (Amritsar), he said, because when he left India, at the age of 19, he was not yet considered old enough for membership. He had, however, accompanied his father to rallies "three to four times." He recalled being present on one occasion in 1999 when police forced his father to stop a rally; the police told him to take his father home or he and his father would both be arrested.

Singh claimed that his father was "harassed" many times but "never so badly" as in July 2000, when he led a "procession" to protest the jailing and beating of Sikhs by the Punjab government. According to Singh (who was not present on this occasion), police subdued the demonstrators with clubs and sticks. They also detained Singh's father for two to three days, beat him, and warned him to desist from such activities. After his release, Singh's father had to be taken to the doctor for dressing of "many injuries on his body and on his face."

A few days later, the police visited Singh's father at home. They slapped and kicked Singh and his father, and told his father that if he did not disassociate himself from the party they would have Singh, his only son, arrested and killed. Singh's father then decided to send Singh away for safety, though he himself was determined to remain in Ropar because of his commitment to the party. Singh left

India a month later, traveling first to Thailand and then to Chile before reaching the United States in February 2001. He claimed that his family continued to receive threats after he left, including specific threats against his life. He also reported that in January 2003 his father was beaten severely enough that he again required medical attention.

To corroborate his testimony, Singh submitted materials including, as relevant here: his father's membership card in Akali Dal (Amritsar); a letter from the President and founder of the Amritsar organization, Simranjit Singh Mann, claiming that Singh would be "persecuted" upon his return and possibly "even eliminated in a fake police encounter"; and "medical records" purporting to corroborate the beating that Singh's father suffered in 2003.

After considering this evidence, the IJ denied Singh's petition for asylum, explaining that he failed to meet "his burden of establishing eligibility for asylum through credible persuasive evidence." The IJ based his adverse credibility determination on three grounds: (1) in the IJ's view, Singh exhibited "confusion" over the name of the party his father belonged to, because in his asylum application Singh referred to the organization as "Akali Dal Mann," whereas at the hearing he called it "Akali Dal Amritsar"; (2) Singh testified at his hearing about two incidents that he did not mention in his asylum application: his own encounter with the police at a rally in 1999 and his father's detention and beating in July 2000; (3) the letter from the founder of Akali Dal (Amritsar) stated that Singh was a "permanent member" whereas he testified that he was not a member. The IJ also remarked that he found nothing in the purported "medical records" to corroborate Singh's claim that his father was beaten in 2003, and that Singh did not provide "sufficient evidence of country conditions" to support his claim of a well-founded fear of future persecution. The IJ concluded by stating that Singh's lack of credibility prevented him from meeting his burdens for withholding of removal and relief under CAT as well.

The BIA affirmed the IJ's decision without opinion. *See* 8 C.F.R. § 1003.1(e)(4).

## II.

Because the BIA summarily affirmed the IJ's decision, we treat the IJ's decision as if it were that of the BIA. *Wang v. Gonzales*, 445 F.3d 993, 997 (7th Cir. 2006); *Lhanzom v. Gonzales*, 430 F.3d 833, 842 (7th Cir. 2005).

Our review is for substantial evidence. *Margos v. Gonzales*, 443 F.3d 593, 597 (7th Cir. 2006); *Feto v. Gonzales*, 433 F.3d 907, 910-11 (7th Cir. 2006). We must

uphold the IJ's decision as long as it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole," *Margos*, 443 F.3d at 597 (internal citation and quotation omitted), which means that it must stand unless the evidence compels us to a conclusion contrary to the IJ's, 8 U.S.C. § 1252(b)(4)(B); *Margos*, 443 F.3d at 597. Moreover, a decision based on an adverse credibility determination is entitled to particular deference, as long as it is supported by "specific, cogent reasons" with a "legitimate nexus to the finding." *Shtaro v. Gonzales,* 435 F.3d 711, 715 (7th Cir. 2006) (internal citation and quotation omitted); *see also Kllokoqi v. Gonzales*, 434 F.3d 336, 341 (7th Cir. 2005).

Singh argues that the IJ's reasons for finding him incredible are not cogent, because, in his view, he gave specific, detailed, and plausible testimony and adequately explained the discrepancies noted by the IJ. He also points to the documentary evidence corroborating his affiliation with Akali Dal (Amritsar).

We too are troubled by the IJ's reasoning. We have repeatedly criticized "the increasing reliance" of the immigration court on "perceived inconsistencies in testimony as the basis for adverse credibility determinations, even in cases where the alleged discrepancies are minor or easily explained." *See Lhanzom*, 430 F.3d at 848; *Tabaku v. Gonzales*, 425 F.3d 417, 423 (7th Cir. 2005). Differences among versions of an applicant's statements *may* support an adverse credibility determination, *see, e.g., Chen v. Gonzales,* 420 F.3d 707, 710 (7th Cir. 2005); *Capric v. Ashcroft*, 355 F.3d 1075, 1090 (7th Cir. 2004), but this is only because a changing story is frequently a false one. The IJ is entitled to reject any testimony he has reason to believe is false. But where a particular inconsistency does not give rise to a reasonable inference that the petitioner is trying to enhance his claims of persecution, the inconsistency has no bearing on his credibility. *See Leia v. Ashcroft*, 393 F.3d 427, 436 (3d Cir. 2005); *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004); *Shah v. INS*, 220 F.3d 1062, 1068 (9th Cir. 2000).

Here the first inconsistency identified by the IJ was Singh's use of two different names for his father's political party. At his hearing Singh tried to explain the discrepancy by asserting that the two names were interchangeable in popular usage, and that "Mann" was the name of the founder of the party. But he also perplexed the IJ by insisting both that there were two separate organizations and that the two names referred to "one and the same thing."

This testimony *was* confusing, and we recognize that the IJ made several attempts to get Singh to reconcile these statements. Nonetheless the IJ should have recognized that the inconsistency of the testimony was the result of a miscommunication and distinguished that sort of inconsistency from those that result when a petitioner attempts to embroider the truth to make it more

sympathetic or forgets an element of a complicated fiction. Immigration judges must be sensitive to the possibility of translation error or misunderstanding. *See Giday v. Gonzales*, 434 F.3d 543, 553 n.4 (7th Cir. 2006); *Tolosa v. Ashcroft*, 384 F.3d 906, 909 (7th Cir. 2004); *Ememe v. Ashcroft*, 358 F.3d 446, 451-52 (7th Cir. 2004). And in this instance, the translator herself expressed difficulty understanding Singh. At one point shortly after the exchange about the proper name of the political party, the translator noted that what Singh was saying did not make literal sense, and a few moments later, she told the IJ that Singh was not forming sentences but speaking "two words at a time in a very broken form."

The second inconsistency asserted by the IJ involves the omission in Singh's asylum application of any reference to the 1999 rally and the July 2000 detention and beating of his father. The IJ did not explain why he thought these omissions important. But an IJ may not find a petitioner incredible merely because he has "testified at the hearing in more detail than in [his] application," *Tolosa*, 384 F.3d at 909; *see also Ssali v. Gonzales*, 424 F.3d 556, 563 (7th Cir. 2005); *Ememe*, 358 F.3d at 453. And neither of the incidents omitted was so integral to Singh's claim that it would have been expected to be included in any version of his testimony, however abbreviated. The incident at the 1999 rally involved only a warning of arrest if Singh did not leave the rally site. And the detention and beating of his father did not involve any threat to Singh personally. Moreover, Singh did include in his asylum application the critical incident that he described in his testimony: the visit of the police to his home during which his life was threatened.

The third inconsistency revolves around whether Singh himself ever belonged to Akali Dal (Amritsar). The IJ found it "material and highly significant" that the letter from the party's founder stated that Singh was a "permanent member" whereas Singh testified at his hearing that he was not. But again, we must consider the inferences to be drawn from an inconsistency. The party founder's statement does not reasonably suggest that Singh was trying to deceive the IJ; if he truly was a member, we can think of no reason for him to deny it.

Because there is insufficient evidence to support the IJ's adverse credibility determination, we GRANT the petition for review and remand the case to the BIA for further proceedings.