In the

# United States Court of Appeals
### For the Seventh Circuit

No. 04-1820

STEEVE SHAMOIL YOUKHANA,

*Petitioner,*

*v.*

ALBERTO R. GONZALES, Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A78 542 148

ARGUED NOVEMBER 28, 2005—DECIDED AUGUST 22, 2006

Before KANNE, ROVNER, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.*   Steeve Shamoil Youkhana, an
Assyrian Christian, fled Iraq in 2001 and sought asylum
in the United States, claiming that he had been persecuted
by the ruling Ba'ath Party regime on the basis of his
religion, ethnicity, and political opinion. The Immigration
Judge (IJ) who considered Youkhana's case found his
testimony generally credible, but failed altogether to
address Youkhana's religious and ethnic persecution claims.
With respect only to his political opinion claim, the IJ
concluded that Youkhana had indeed been persecuted for
his refusal to join the Ba'ath Party. This past persecution,
however, was not enough to establish a basis for a well-

founded fear of future persecution, because the Ba'ath Party had been removed from power by the 2003 U.S.-led invasion of Iraq. The IJ thus denied Youkhana's claim. The Board of Immigration Appeals (BIA) summarily affirmed.

Although we see no legally supported reason to disagree with the IJ's resolution of Youkhana's claim of persecution based on political opinion, we conclude that the BIA erred by denying Youkhana's religious and ethnic persecution claims without discussion. We therefore grant Youkhana's petition for review and remand so that the BIA can address these claims.

**I**

Youkhana is an Assyrian Christian and a member of the Chaldean Catholic Church. According to the State Department's 2005 Country Report on Human Rights in Iraq, followers of the Christian faith make up a small and shrinking minority of the population in Iraq; 97 percent of Iraqis are Muslim, and the number of Christians in Iraq has decreased dramatically in recent years. In addition to being identified as members of a minority religion, Assyrian and Chaldean Christians are considered by other Iraqis to constitute a distinct non-Arab ethnic minority.

In March 2002, Youkhana attempted to enter the United States at a border crossing in San Ysidro, California, having already unsuccessfully attempted to apply for asylum in the United States from Mexico. Immigration officials stopped him at the border; when he admitted that he did not possess a valid visa, they issued him a Notice to Appear. In June 2002, Youkhana moved for and was granted a change of venue for his immigration proceedings from San Diego to Chicago. In July 2002, Youkhana filed for asylum.

The asylum hearing took place on May 28, 2003, two months after the U.S.-led invasion of Iraq, but prior to the capture of former Iraqi President Saddam Hussein. The

principal basis of Youkhana's asylum claim consisted of three incidents in which he was arrested and detained by authorities in Iraq, allegedly because of his religion, ethnicity, and political opinion. In addition to his own testimony regarding these incidents, several aspects of Youkhana's claims were corroborated by the testimony of his sister, Eilina Shamoil Youkhana, who is a legal permanent resident of the United States.

Youkhana testified that he was first arrested in 1997 while in his final year of high school. In his written asylum statement, he explained that he and two of his Assyrian friends were approached by government officials and accused of making derogatory comments about the Ba'ath Party and Saddam Hussein. In his oral testimony, Youkhana elaborated that the detention occurred because he refused to join the Ba'ath Party and "because I was Assyrian Christian, and they used to brand us as enemies of the Ba'ath Party because we are Christians, and we go to the church, and [ ] we have relations with parties opposing the regime." During 45 days in custody, Youkhana was interrogated and beaten. Upon his release, he was required to sign a statement that he would not participate in any anti-government activities.

In 1999, while undertaking compulsory service in the Iraqi army, Youkhana was arrested again, this time for allegedly throwing dirt at a picture of Saddam Hussein. While detained, Youkhana was beaten about the head until he lost consciousness, leaving a scar behind his ear. Before being released, Youkhana was required to sign another statement, this one stating that he would be executed if he ever again participated in anti-government activity.

Finally, in 2001, while still in the army, Youkhana was arrested and accused of assisting the escape of an Assyrian prisoner charged with illegally selling fuel in the north of Iraq. Testifying in immigration court, Youkhana denied the

charge and explained that he was singled out for punishment only because the authorities "wanted to stick this charge to me because I was Assyrian Christian, and [ ] because I was not a member of the Ba'ath Party." Again he was badly beaten about the head. After two days he managed to escape detention, at which point he decided to leave Iraq.

The IJ questioned Youkhana and his sister at length about the removal of the Ba'ath Party regime from power and the relevance of this fact to Youkhana's claim that he would be persecuted if he returned to Iraq. Youkhana testified that he remained at risk of persecution because members of the Ba'ath Party remained active in Iraq. He also explained that Assyrian Christians faced a new threat of persecution from "Muslim radicals" who, Youkhana testified, "brand us Christians as dirty infidels." This latter point was supported by several newspaper articles attached to Youkhana's asylum application. A typical article stated that "Christians throughout Iraq are feeling intimidated" and "[t]hey say they are being harassed and threatened by members of Shiite Muslim groups who are grabbing power and who appear eager to transform Iraq into an Islamic republic." Michael Slackman & Robin Dixon, *Shiite Gains Trouble Christians*, THE DETROIT NEWS, May 11, 2003, at 5A.

In addition to his questions regarding country conditions in Iraq, the IJ made a number of unusual statements suggesting that Youkhana had a duty to return to Iraq to assist in the dismantling of the Ba'ath Party regime. The IJ inquired, for example, whether Youkhana thought he "could be of help to the U.S. forces in finding the bad, evil Ba'ath Party people," and stated that "[t]he government of Iraq probably needs people like you." Finally, in denying asylum to Youkhana, the IJ dressed his decision in patriotic garb, stating: "The government of Iraq, particularly the Ba'ath Party, have been removed at great expense in terms of lives

of the coalition forces as well as the Iraqi people. To ignore the effort that has gone into removing the Ba'ath Party would be a significant injustice to all of those lives that were lost in freeing Iraq from its persecutors." The IJ also denied Youkhana's applications for withholding of removal and relief under the Convention Against Torture. Regarding the latter claim, the IJ reasoned that "[g]iven the fact that there is no government of Iraq any longer, it cannot be stated that the government of Iraq would persecute or treat the respondent in a cruel or inhumane manner."

Youkhana appealed the denial of his asylum application to the BIA, contending that the IJ had failed to address his religious and ethnic persecution claims at all, had "erred in not considering that conditions in Iraq have changed for the worst [sic] in Iraq for the Christians," and "placed the respondent in a most uncomfortable situation, in effect [ ] requesting that he join the U.S. military in Iraq." The BIA affirmed without opinion pursuant to 8 C.F.R. § 1003.1(e)(4). After filing this petition for review, Youkhana filed a motion to reopen with the BIA, attaching further documentation of deteriorating conditions in Iraq for Assyrian Christians. The BIA denied this motion as well. Youkhana did not file a second petition for review challenging the denial of his motion to reopen.

## II

In this petition for review, Youkhana contends that the BIA erred by refusing to consider the religious and ethnic persecution aspects of his asylum claim and denying his request for relief under the Convention Against Torture. He does not contest the BIA's denial of his claims for relief insofar as they rested on persecution based on his political opinion. Youkhana also argues that the BIA abused its discretion by refusing to grant his motion to reopen. We consider each of his claims in turn.

**A**

A petitioner seeking asylum carries the burden of proving by a preponderance of the evidence that she suffered past persecution or has a well-founded fear of future persecution on account of her race, religion, nationality, membership in a particular social group, or political opinion. *Sosnovskaia v. Gonzales*, 421 F.3d 589, 593 (7th Cir. 2005). "An applicant who has been found to have established [ ] past persecution shall also be presumed to have a well-founded fear of persecution on the basis of the original claim." 8 C.F.R. § 208.13(b)(1). This presumption of future persecution can be rebutted if the IJ finds by a preponderance of the evidence that there has been "a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant's country of nationality." 8 C.F.R. § 208.13(b)(1)(i)(A). An asylum applicant can also prove a well-founded fear of future persecution by showing "that he genuinely fears he will be persecuted based on a protected ground if returned to his native country, and that his fears are objectively reasonable." *Jamal-Daoud v. Gonzales*, 403 F.3d 918, 922 (7th Cir. 2005).

In reviewing the denial of an asylum claim, "we assess whether the BIA's determination was supported by reasonable, substantial, and probative evidence on the record considered as a whole, and reverse only if the evidence compels a contrary conclusion." *Tapiero de Orejuela v. Gonzales*, 423 F.3d 666, 671 (7th Cir. 2005) (quotation marks omitted). In cases such as this one, where the BIA affirms an IJ's decision without opinion, "the IJ's decision becomes that of the BIA for purposes of judicial review." *Georgis v. Ashcroft*, 328 F.3d 962, 966-67 (7th Cir. 2003).

The IJ credited Youkhana's testimony that the three detentions occurred. The IJ concluded, however, that the final detention resulted from the prosecution of a criminal matter and thus "was not 'on account of' any ground that is protected by the [Immigration and Nationality] Act."

Nevertheless, the IJ apparently believed that the 1997 and 1999 detentions constituted sufficient proof of Youkhana's past persecution based on political opinion to raise a presumption of a well-founded fear of future persecution. The IJ thus turned to the question of changed country conditions in Iraq, concluding that the removal of the Ba'ath Party regime rebutted the presumption of future persecution. As he put it, "it is the assessment of this Judge that the fundamental change in country conditions requires that the respondent's request for political asylum be denied."

Although the government argues that the IJ also concluded that Youkhana had not been persecuted because of his religion or ethnicity, we cannot locate any such statement in the IJ's decision. Similarly unavailing is the government's assertion that Youkhana manufactured his claims of religious and ethnic persecution only after the fall of the Ba'ath Party regime; in fact, Youkhana presented these claims in his asylum application and pursued them before the IJ and in his appeal to the BIA. Nor does the IJ's finding of changed country conditions dispose of Youkhana's religious and ethnic persecution arguments. The fact that the Ba'ath Party has been removed from power does not necessarily mean that conditions in Iraq have improved for Assyrian Christians. See *Margos v. Gonzales*, 443 F.3d 593, 598 (7th Cir. 2006) ("Ironically, under [ ] Hussein's iron fist, Assyrian Christians and similar minorities were arguably better off as their dictator did not tolerate factional strife and civil unrest within 'his' country (unless it furthered his own ends)."). Independent analysis of these claims by the IJ was thus required.

Particularly striking is the failure of both the IJ and the BIA to discuss the 2001 State Department Country Report on Iraq (submitted by the government to the IJ), which stated that the Ba'ath Party regime "engaged in various abuses against the country's [ ] Assyrian and Chaldean Christians." We have previously admonished the BIA

for ignoring a prior version of this same publication in an asylum case involving an Assyrian Christian. See *Mansour v. INS*, 230 F.3d 902, 907-08 (7th Cir. 2000) (stating that the 1998 Country Report, which "suggest[ed] that the Iraqi government has engaged in abuses against the Assyrian Christians," may be "an indication of gross, flagrant, or mass violations of human rights in Iraq; however, the BIA never addressed this evidence"). We also take judicial notice that the State Department has recently released its 2005 Country Report on Iraq, the first such report published since the removal of the Ba'ath Party regime in 2003. This publication states that while governing law now provides for freedom of religious belief and practice, "[d]eficiencies in security force capabilities and in the rule of law made it difficult for the justice system to investigate or address violations of these rights," noting particularly the "harassment of Christians." More generally, it paints a picture of "[a] climate of extreme violence" in which "[r]eports increased of killings by the government or its agents" as well as by "common criminals, insurgents, and terrorists . . . sometimes masking their identity in police and army uniforms." On remand, therefore, the BIA must consider whether the Iraqi government has failed to protect Assyrian Christians like Youkhana from persecution by insurgent Ba'ath Party members or Muslim extremist organizations, and if so, whether this constitutes a ground for granting asylum (or some other form of relief from removal) to Youkhana. See *Galina v. INS*, 213 F.3d 955, 958 (7th Cir. 2000) (persecution can be found where, although "government authorities . . . did not actually perpetrate or incite [ ] persecution, [they] condoned it or at least demonstrated a complete helplessness to protect the victims").

In *Margos* we commented in dicta that the 2005 Country Report on Iraq and similar general publications did not, by themselves, provide a sufficient basis for proving a

pattern or practice of the persecution of Assyrian Christians, under circumstances in which the applicant had failed to exhaust her administrative remedies. 443 F.3d at 598-99. It should go without saying that each case must be assessed on its own record; nothing in *Margos* indicates that uniquely in this area the BIA may *not* take the Country Report into account as some evidence supporting a finding of persecution. As the Supreme Court made clear in a case analogous to this one, "well-established principles of administrative law [ ] require [a] Court of Appeals to remand [a] 'changed circumstances' question to the BIA." *INS v. Ventura*, 537 U.S. 12, 16 (2002) (*per curiam*). We apply those same principles here, remanding to give the BIA an opportunity to consider the relevance of changed country conditions in Iraq to Youkhana's claims of persecution based on his religion and ethnicity.

Since we are remanding Youkhana's asylum claim, we need not reach his argument that the BIA also erred by denying his request for relief under the Convention Against Torture (CAT). We note, however, the IJ's mistake in concluding that Youkhana was foreclosed from bringing a CAT claim because there was "no government of Iraq any longer." For purposes of the Convention, torture is defined broadly to include "pain or suffering . . . inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). Moreover, at least since the conclusion of the initial phase of the U.S. action in Iraq, various governing authorities have existed. As of May 16, 2003, Iraq was governed by the Coalition Provisional Authority (CPA). See generally http:// www.cpa-iraq.org/. As of June 28, 2004, the CPA transferred power to the Iraqi Interim Government, which in turn handed the reins over to the Iraqi Transitional Government on January 30, 2005; since that time, in early 2006, the elected government of Iraq has taken over. See generally World Factbook,

http://www.cia.gov/cia/publications/factbook/geos/iz.html.
For purposes of assessing Youkhana's likely fate if he were
returned to Iraq, it is the last of those governments that is
the important one now. Even at the time the IJ had the
case, the CPA leaders probably qualified as "public officials
. . . acting in an official capacity" for purposes of the CAT.
The IJ therefore should have analyzed this claim for relief.

**B**

Youkhana also argues that the BIA abused its discre-
tion by refusing to grant his motion to reopen, a motion he
filed after he had already submitted his petition for review
of the BIA's merits decision to this court. The motion
contained a number of attachments supplementing the
documentation Youkhana had earlier provided the IJ re-
garding deteriorating conditions for Assyrian Christians
in Iraq. Youkhana argued that these attachments demon-
strated that "Christian Assyrians are being targeted and
massacred in Iraq," and that information regarding this
pattern and practice of abuse of Assyrian Christians was
not available at the time of the asylum hearing. The BIA
rejected the motion, explaining that it was untimely and
that Youkhana failed to satisfy the regulatory exception
that permits a late motion to reopen based on evidence of
changed country circumstances unavailable at the time of
the original asylum hearing. See 8 C.F.R. § 1003.2(c)(3)(ii).
In his brief to this court, Youkhana renews his argument
that the evidence he submitted of worsening conditions
in Iraq for Assyrian Christians was previously unavail-
able and therefore provided a proper basis for reopening.

We cannot reach the substance of Youkhana's argument
because he never filed a separate petition for review of the
BIA's denial of his motion to reopen. The requirement to file
separate petitions for review stems from two provisions of
the Immigration and Nationality Act (INA). The first

requires that a petition for review "must be filed not later than 30 days after the date of the final order of removal." 8 U.S.C. § 1252(b)(1). The second states that "any review sought of a motion to reopen or reconsider the order shall be consolidated with the review of the order." 8 U.S.C. § 1252(b)(6). In reviewing nearly identical provisions in a previous version of the INA, the Supreme Court observed that "[a]ll would agree" that the latter provision "envisions two petitions for review," since it "requires for its operation the existence of two separate final orders, the petitions for review of which could be consolidated." *Stone v. INS*, 514 U.S. 386, 395 (1995). The Court thus concluded that the filing of a motion for reconsideration or reopening does not toll the time for an alien to petition for review of a BIA decision on the merits. *Id.*

This case presents the inverse situation: an alien who has failed to file a petition for review of a motion to reopen after having already filed a petition for review of the BIA's decision on the merits. Nevertheless, the same rule applies. Youkhana was required to file a separate petition for review if he wished us to consider the BIA's denial of his motion to reopen. Since he did not do so, we lack jurisdiction over this aspect of his claim.

### III

We therefore GRANT Youkhana's petition for review of the BIA's denial of his asylum claim and REMAND this matter to the BIA for further proceedings consistent with this opinion. Youkhana's challenge to the BIA's denial of his motion to reopen is DISMISSED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*