In the

# United States Court of Appeals
### For the Seventh Circuit

No. 13-2939

BENJAMIN CARLOS RUIZ-CABRERA,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR.,
Attorney General of the United States,

*Respondent.*

Petition for Review of an Order of
the Board of Immigration Appeals.
A089-276-407

ARGUED MARCH 5, 2014 — DECIDED APRIL 8, 2014

Before EASTERBROOK, MANION, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Petitioner Benjamin Ruiz-Cabrera is a Mexican citizen who fears harm from his physically abusive and politically active wife back in Mexico. He challenges the denial of his applications for withholding of removal and protection under the Convention Against Torture. He maintains that his wife and her political allies will target him for persecution based on his proposed particular social

group: "persons who face persecution by corrupt governmental and law enforcement authorities instigated by a politically connected spouse." He also asserts he will be persecuted for imputed political opinions in opposition to or in support of his wife's political party.

We deny Ruiz-Cabrera's petition. The Board of Immigration Appeals did not err by finding that he failed to identify a valid "particular social group" within the meaning of the statutes authorizing asylum and withholding of removal. See 8 U.S.C. § 1101(a)(42)(A) (defining "refugee"), § 1158(b)(1)(A) (authorizing asylum); § 1231(b)(3)(A) (requiring withholding of removal if alien's "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion"). In addition, substantial evidence supports the Board's determinations that Ruiz-Cabrera did not show imputed political opinion or a likelihood of torture.

I.  *Factual and Procedural Background*

Ruiz-Cabrera entered the United States without inspection (i.e., unlawfully) in 2001. He came to the attention of immigration authorities in 2009 after an arrest. He conceded removability, but he applied for withholding of removal under 8 U.S.C. § 1231 saying that he feared returning to Mexico because of threats and mistreatment by his wife, who holds a local office as a member of Party of the Democratic Revolution (PRD). Ruiz-Cabrera stated in his application that he feared his wife would "use her political influence to have people close to her cause me harm, including torture at the hands of Mexican law enforcement." He sought relief based on imputed political

opinion (opposition to the PRD) and membership in a particular social group, which he defined as "individuals who face persecution by corrupt governmental and law enforcement authorities instigated by a politically connected spouse." He also applied for protection under the Convention Against Torture. See 8 C.F.R. § 1208.16(c).

At his hearing before an immigration judge, Ruiz-Cabrera recounted experiences that led him to fear his wife. The two had begun dating in 1989, had three sons over the next seven years, and married in 2000. Ruiz-Cabrera testified that throughout the 1990s, his wife would often become violent (throwing stones and other objects at him) and twice urged men to fight him, publicly asserting that he had abused her. Though he was able to defuse those confrontations, Ruiz-Cabrera singled out a particularly frightening incident in 1996 or 1997 when someone fired two shots at him. He believes the shots were fired by the brother of a neighbor with whom his wife accused him of having an affair. Ruiz-Cabrera said that he agreed to marry his wife in 2000 "to keep [his] children secure." He entered the United States illegally a year later, though, leaving behind his sons—then ages 10, 9, and 5. He had not told his wife or children of his plans. When he called her from the United States, she threatened to have him extradited back to Mexico.

To substantiate his fears that his wife would use her political connections to harm him, Ruiz-Cabrera testified about two encounters in 2002 with Mexican police. First, during an eight-month return to Mexico, police detained him based on his wife's false accusation that he had groped her. The police had him stand naked for five minutes while they visually

examined him. He was released later that day only after his wife dropped the charges. A few weeks later, his car was pulled over by a police officer who he believed was trailing him at his wife's behest. The officer attempted to plant cocaine in his pocket but let him go only after he paid a small bribe.

The immigration judge found Ruiz-Cabrera's testimony (and corroborating telephonic testimony from his mother and brother in Mexico City) to be credible but still denied his applications for relief. The judge concluded first that Ruiz-Cabrera had not proposed a valid social group because he did not identify a shared characteristic aside from persecution. The judge also found that Ruiz-Cabrera had not shown that he would be harmed based on his membership in that group. Rather, said the judge, his wife targeted him in "a personal vendetta."

The judge then explained that Ruiz-Cabrera had not offered any evidence to show that an alleged persecutor would impute any political opinion to him. Finally the judge concluded that Ruiz-Cabrera could not show a likelihood of torture because he had not been injured and he had failed to show that his wife had ever followed through on her threats. The Board of Immigration Appeals adopted and affirmed the immigration judge's order with its own written opinion. We have jurisdiction under 8 U.S.C. § 1252 to review the decision.

II.  *Analysis*

A.  *"Particular Social Group"*

Where the Board has adopted the decision of the immigration judge and added its own reasoning, we review both decisions. *Pouhova v. Holder*, 726 F.3d 1007, 1011 (7th Cir. 2013); *Mema v. Gonzales*, 474 F.3d 412, 416 (7th Cir. 2007). We must affirm the decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole, and we may overturn it only if the record compels a contrary result, 8 U.S.C. § 1252(b)(4)(B); *INS v. Elias-Zacarias*, 502 U.S. 478, 481 & n.1 (1992); *Abraham v. Holder*, 647 F.3d 626, 632 (7th Cir. 2011), or there has been a legal error, 8 U.S.C. § 1252(a)(2)(D); *Sirbu v. Holder*, 718 F.3d 655, 658–60 (7th Cir. 2013); *Asani v. INS*, 154 F.3d 719, 722–23 (7th Cir. 1998).

The meaning of the flexible statutory term "particular social group" is not self-evident from the statutory text. The Board of Immigration Appeals has limited the concept to groups whose membership is defined by a characteristic that is either immutable or is so fundamental to individual identity or conscience that a person ought not be required to change. *Matter of Acosta*, 19 I. & N. Dec. 211, 233–34 (1985), overruled in part on other grounds, *Matter of Mogharrabi*, 19 I. & N. Dec. 439, 441 (BIA 1987). Under the principles of *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43 (1984), we defer to the Board's interpretation of the statute. See *Escobar v. Holder*, 657 F.3d 537, 542 (7th Cir. 2011); *Lwin v. INS*, 144 F.3d 505, 511–12 (7th Cir. 1998).

Ruiz-Cabrera contends that his proposed group is cognizable because its members—people who fear harm from

politically connected spouses—share the characteristic of being married. He asserts that the identity of one's spouse (or in the case of divorce one's former spouse) is an immutable characteristic.

The immigration judge and Board did not err by rejecting this proposed group. The common characteristic shared by its members is that they face persecution. Though a social group does not "require[] complete independence of any relationship to the persecutor," *Cece v. Holder*, 733 F.3d 662, 671 (7th Cir. 2013) (en banc); see also *Escobar*, 657 F.3d at 545–46, the group must be linked by something more than persecution. See *Jonaitiene v. Holder*, 660 F.3d 267, 271–72 (7th Cir. 2011). As Ruiz-Cabrera has framed the question, marriage is his relationship to his alleged persecutor, not a characteristic shared by all members of the proposed group. Ruiz-Cabrera failed to identify any other shared characteristic. Moreover, substantial evidence supports the immigration judge's and Board's conclusion that his wife tried to hurt him out of personal animosity. "A personal dispute, no matter how nasty, cannot support an alien's claim of asylum." *Marquez v. INS*, 105 F.3d 374, 380 (7th Cir. 1997); see *Wang v. Gonzales*, 445 F.3d 993, 998 (7th Cir. 2006). Ruiz-Cabrera is not entitled to withholding of removal based on persecution of a particular social group.

### B.  *Imputed Political Opinion*

Ruiz-Cabrera next asserts that the Board and immigration judge misinterpreted his claim that he would face persecution on the basis of imputed political opinion. He seems to suggest that two different and opposing types of political opinion will

be imputed to him: first, PRD politicians see him as anti-PRD because of his bad relationship with his wife, but second, drug traffickers will "mistake his wife's involvement in politics for his own support for the government" and will target him on that basis.

The immigration judge reasonably found that Ruiz-Cabrera failed to substantiate his claim that any political opinion would be imputed to him based on his wife's politics. It is not enough to show that a family member holds a political opinion. Ruiz-Cabrera also must show that an alleged persecutor would impute that opinion to him. See *N.L.A. v. Holder*, No. 11-2706, — F.3d —, —, 2014 WL 806954, at *6 (7th Cir. March 3, 2014); *Hassan v. Holder*, 571 F.3d 631, 641–42 (7th Cir. 2009); *Sankoh v. Mukasey*, 539 F.3d 456, 471–72 (7th Cir. 2008). The only evidence Ruiz-Cabrera supplied on this theory was general background evidence of drug violence and political corruption in Mexico. Nothing in the record indicates that traffickers or politicians are likely to connect him to his wife's politics or to target him for those reasons.

Accordingly, the Board and immigration judge did not err by denying Ruiz-Cabrera's application for withholding of removal under 8 U.S.C. § 1231(b)(3).

C.  *Convention Against Torture*

With respect to his claim for protection under the Convention Against Torture, Ruiz-Cabrera contends that the Board erroneously limited its review to factual error when it upheld the immigration judge's conclusion that he had not shown a likelihood that he would suffer harm constituting torture. Nothing in the decision suggests that the Board so

limited its review, and substantial evidence supports the immigration judge's conclusion that Ruiz-Cabrera did not show that he would likely suffer harm so barbaric that it met the definition of torture. See 8 C.F.R. § 1208.18(a)(2) (defining torture as "an extreme form of cruel and inhuman treatment"); *Bathula v. Holder*, 723 F.3d 889, 903–05 (7th Cir. 2013); *Margos v. Gonzales*, 443 F.3d 593, 600 (7th Cir. 2006).

PETITION DENIED.